**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| KIMBERLY DIEI, <br><br>         *Plaintiff*, <br><br>    v. <br><br> RANDY BOYD, *in his individual and official capacity as President of the University of Tennessee System*; CHRISTA GEORGE, *in her individual and official capacity as Chair of the University of Tennessee Health Science Center College of Pharmacy's Professional Conduct Committee*; BRAD BOX; JOHN COMPTON; CHARLES HATCHER; DECOSTA JENKINS; KARA LAWSON; AMY MILES; WILLIAM RHODES III; DONNIE SMITH; KIM WHITE; ALAN WILSON, AND; JAMIE WOODSON, *in their official capacities as members of the Board of Trustees of the University of Tennessee*, <br><br>         *Defendants*. | **CIVIL ACTION NO.: _____** <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

**INTRODUCTION**

1.    Kimberly Diei brings this First Amendment lawsuit because her public university is violating her constitutional rights by policing her personal, off-campus expression on social media. Diei was nearly expelled from the University of Tennessee Health Science Center College of Pharmacy after university officials twice investigated her personal social media activity, concluding some of her posts were too "crude," "vulgar," or "sexual." Because of the

vague, subjective standards employed by university officials during this shocking ordeal, Diei fears that participating in everyday discussions online may again put her doctoral degree at risk. The First and Fourteenth Amendments do not allow this result.

2.     A University of Chicago graduate now pursuing a Doctor of Pharmacy degree, Diei is an excellent student. Outside of school, Diei expresses herself on social media using the pseudonym "KimmyKasi." In particular, Diei enjoys commenting on topics of interest to her and other young, black social media users, occasionally using profanity and freely expressing her views about sexuality. None of her posts identify her as a College of Pharmacy student or indicate any affiliation with the University of Tennessee.

3.     Through an anonymous complaint, the College of Pharmacy's Professional Conduct Committee ("Committee") learned of Diei's social media activity in 2019. After an "investigation," the Committee punished Diei for allegedly violating "various professionalism codes." A year later, the Committee again investigated Diei's social media activity. In four days, the Committee contacted Diei about her social media, "investigated" her social media, and unanimously voted to expel her for posting "sexual," "crude," and "vulgar" content that again allegedly violated "various professionalism codes." Despite punishing Diei twice under these "various professionalism codes," the Committee never provided them to Diei. To this day, Diei does not know what policy she violated or what expression the College of Pharmacy considers too "sexual," "crude," or "vulgar" for its doctoral students' social media activity. Although Diei successfully appealed her expulsion, Diei fears that it is simply a matter of time before the Committee begins another investigation into her protected expression on social media.

4.     The College of Pharmacy cannot police and punish the protected expression of students like Kimberly Diei simply because officials do not like or understand it. *Papish v. Bd. of*

*Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) ("[T]he mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'"). "[S]tate colleges and universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). Accordingly, public institutions cannot investigate or discipline—let alone expel—students for speech protected by the First Amendment. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765–66 (6th Cir. 2019). But that is exactly what the University of Tennessee Health Science Center College of Pharmacy tried to do.

## JURISDICTION AND VENUE

5.      This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Relief Act, 28 U.S.C. §§ 2201–2202. Plaintiff seeks declaratory and injunctive relief against enforcement of the College of Pharmacy's "various professionalism policies," as well as damages for violations of her free-speech and due-process rights.

6.      Accordingly, this Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because at least one of the defendants resides in this District.

8.      Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES

9.      At the time of filing this Complaint, Kimberly Diei is, and was at all times relevant to the Complaint, a resident of Memphis, Tennessee. She is, and was at all times

relevant to the Complaint, a student at the College of Pharmacy. Diei is pursuing her Doctor of Pharmacy degree along with a certification in nuclear pharmacy.

10.     Defendant Randy Boyd is, and was at all times relevant to this Complaint, the president of the UT system. He is the chief executive officer in charge of the University of Tennessee ("UT") system. President Boyd manages and directs all affairs of the UT system under the policies and regulations established by the Board of Trustees of the UT system. President Boyd is responsible for the administration and enforcement of policies and regulations relating to the operation of the College of Pharmacy. He is also responsible for preparing and submitting to the Board for its approval all statements of policy or programs which he believes are needed for the control and management of the College of Pharmacy. Thus, President Boyd is responsible for the promulgation, implementation, and enforcement of the College of Pharmacy's policies, procedures, and practices, including those that were applied to deprive Diei of her constitutional rights. President Boyd knew or reasonably should have known that the College of Pharmacy's policies, procedures, and practices would lead to this deprivation. President Boyd knew that individuals under his supervision implemented the College of Pharmacy's policies, procedures, and practices that deprived Diei of her constitutional rights, and President Boyd, with deliberate indifference, failed to act with regard to the constitutional rights of Diei and all the College of Pharmacy students. At all times relevant to this Complaint, President Boyd acted under color of state law and is sued in his individual and official capacities.

11.     Defendant Christa George is, and was at all times relevant to this Complaint, an Associate Professor of Clinical Pharmacy and Translational Science and the Chairperson of the College of Pharmacy's Professional Conduct Committee. The Committee, which is composed of nine faculty members and three student members, investigates complaints of unprofessional

conduct. As Chairperson, George is responsible for supervising and implementing policies and procedures for student conduct and discipline relating to professionalism. Thus, Chairperson George is responsible for promulgating, implementing, and enforcing the College of Pharmacy's policies, procedures, and practices, including those that were applied to deprive Diei of her constitutional rights. Chairperson George knew or reasonably should have known that the College of Pharmacy's policies, procedures, and practices would lead to this deprivation. Chairperson George knew that individuals under her supervision implemented the College of Pharmacy's policies, procedures, and practices that deprived Diei of her constitutional rights, and Chairperson George, with deliberate indifference, failed to act with regard to the constitutional rights of Diei and all College of Pharmacy students. At all times relevant to this Complaint, Chairperson George acted under color of state law and is sued in her individual and official capacities.

12.     Defendants Brad Box, John Compton, Charles Hatcher, Decosta Jenkins, Kara Lawson, Amy Miles, William Rhodes III, Donnie Smith, Kim White, Alan Wilson, and Jamie Woodson are members of the Board of Trustees of the UT system ("Board"). The Board is the governing body responsible for the formulation and approval of policies for the operation of the UT system, which includes the College of Pharmacy. *See* Tenn. Code Ann. § 49-9-209(e)(1); Tenn. Code Ann. § 49-9-209(d)(1)(I). The Board is responsible for considering and adopting the recommendations of the UT president on matters of policy. The Board approved the College of Pharmacy's policies, procedures, and practices that resulted in the deprivation of Diei's constitutional rights, and the Board knew or reasonably should have known that the College of Pharmacy's policies, procedures, and practices would lead to this deprivation. Despite this knowledge, the Board was deliberately indifferent to the unconstitutionality of the College of

Pharmacy's policies, procedures, and practices as well as Diei's constitutional rights. At all times relevant to this Complaint, the trustees of the Board acted under color of state law and are sued only in their official capacities.

## FACTUAL ALLEGATIONS

**Kimberly Diei Is an Excellent Student at the College of Pharmacy.**

13.     Diei graduated from the University of Chicago with a Bachelor of Arts in Biological Sciences in June 2015.

14.     In August 2019, Diei began her studies at the College of Pharmacy.

15.     Diei is pursuing a Doctor of Pharmacy degree at the College of Pharmacy, and she anticipates graduating with her degree in 2023.

16.     Diei is an excellent student and is in good academic standing at the College of Pharmacy.

17.     As a student at the College of Pharmacy, Diei has also secured competitive internships.

18.     No one from the College of Pharmacy has complained that Diei is unprofessional in the classroom.

19.     No one from the College of Pharmacy has complained that Diei has engaged in unprofessional behavior apart from her social media posts.

20.     No one from Diei's internships has ever complained that Diei is unprofessional.

**Diei Regularly Uses Social Media Under the Pseudonym "KimmyKasi."**

21.     Since February 2016, Diei has maintained an Instagram account under the pseudonym "KimmyKasi."

22.    Since March 2016, Diei has also maintained a Twitter account under the pseudonym "KimmyKasi."

23.    Diei uses the pseudonym KimmyKasi for her Instagram and Twitter accounts in order to maintain separation between her life as Kimberly Diei and her online expression as KimmyKasi.

24.    Diei prefers to maintain separation between her life as Kimberly Diei and her online expression as KimmyKasi because it allows her to more fully express herself in the public arena.

25.    Consequently, Diei has never identified herself in her social media posts as a College of Pharmacy student nor has she indicated any affiliation with the University of Tennessee.

26.    Before the filing of this lawsuit, anyone who attempted to search for "Kimberly Diei" on Google and other search engines would have a difficult time determining that "Kimberly Diei" is "KimmyKasi" because of actions taken by Diei.

27.    Diei does not restrict public access to her accounts and has gained a following by commenting on topics of public interest. As a result, she has over 19,600 followers on Instagram and over 1,600 followers on Twitter.

28.    Diei has never used her personal social media accounts in a way that would impact her ability to fulfill her academic and professional responsibilities.

29.    Diei has never violated Instagram's Terms of Use or Twitter's Terms of Service.

30.    Diei's personal social media accounts do not contain nudity.

31.    Diei has never used her social media accounts in a way that negatively impacts her ability to complete the College of Pharmacy curriculum.

32.     Diei does not use her social media accounts in the classroom.

33.     Diei uses her personal cellphone and computer when she uses her personal social media accounts.

**Chairperson George Punishes Diei for "Sexual" Social Media Posts in September 2019.**

34.     In September 2019, Committee Chairperson George informed Diei that an anonymous individual reported her social media posts to the Committee.

35.     Chairperson George told Diei that the Committee would investigate her social media accounts to determine if her content violated the College of Pharmacy's professionalism policies.

36.     Chairperson George did not provide Diei with any specific professionalism policies that she allegedly violated.

37.     Diei was informed that the College of Pharmacy maintains a policy entitled "Standards for Student Professionalism Conduct."

38.     The College of Pharmacy, however, has never provided a policy entitled "Standards for Student Professionalism Conduct" to Diei.

39.     The College of Pharmacy represents to students that the "Standards for Student Professionalism Conduct" is available at the following URL:

http://catalog.uthsc.edu/content.php?catoid=29&navoid=2706. However, this January 28, 2021 screenshot of the URL shows that it produces an error message, not a professionalism policy:



40.     As a result of the University's actions, Diei has never seen a policy entitled "Standards for Student Professionalism Conduct."

41.     Chairperson George also did not identify the specific content from Diei's social media accounts that were objectionable, including the specific content that prompted the investigation.

42.     On September 12, 2019, Diei appeared before the Committee after being summoned by Chairperson George.

43.     During the Committee meeting, Chairperson George informed Diei that the Committee unanimously determined that Diei's social media accounts violated the College of Pharmacy's professionalism policies because of the "sexual," "crude," and "vulgar" nature of her content.

44.     At this meeting, Chairperson George did not explain how the alleged "sexual" and "crude" nature of Diei's content violated the College of Pharmacy's professionalism policies.

45.     To this day, Diei does not know specifically how the "sexual" and "crude" nature of her content violated the College of Pharmacy's professionalism policies because Chairperson

George has never explained how the allegedly "sexual," "crude," or "vulgar" nature of her personal content violated those policies.

46.     Due to the alleged "unprofessional" content, the Committee recommended to Marie Chisholm-Burns, the Dean of the College of Pharmacy, that Diei write a letter reflecting on her behavior and the expectations of the College of Pharmacy.

47.      Dean Chisholm-Burns concurred with the Committee's recommendations, and she informed Diei of her decision on October 14, 2019.

48.     Diei was extremely distressed by the decision of Dean Chisholm-Burns, Chairperson George, and the Committee.

49.     Diei felt that Dean Chisholm-Burns, Chairperson George, and the Committee violated her free-speech rights by punishing her for personal content she published on her social media accounts.

50.     Diei agreed to write a letter because she wanted to continue her studies at the College of Pharmacy, but Diei did not admit that she understood the professionalism policies and stated that she would attempt to comply with her best guess as to what the College of Pharmacy's professionalism policies prohibited.

51.     Dean Chisholm-Burns, Chairperson George, and the Committee did not provide any specificity as to the expression prohibited by the College of Pharmacy's professionalism policies.

52.     As a result of the Committee's punishment and failure to provide her with any specificity as to the expression prompting her punishment, Diei began to self-censor her social media accounts in order to comply with her best guess as to what the College of Pharmacy's professionalism policies prohibited.

53.     From October 14, 2019, to August 26, 2020, Diei deliberately self-censored, refraining from engaging in constitutionally protected expression because she feared that she would again violate the College of Pharmacy's professionalism policies.

54.     Diei had a difficult time self-censoring because neither Chairperson George nor anyone else at the College of Pharmacy identified the professionalism policies Diei allegedly violated or explained how the "sexual" and "crude" nature of her personal content violated those policies.

**Chairperson George Votes to Expel Diei for the "Crude" and "Sexual" Nature of her Social Media Posts in September 2020.**

55.     On Thursday, August 27, 2020, Chairperson George notified Diei by email that she received another complaint concerning Diei's "unprofessional social media posts."

56.     In the email, Chairperson George provided a link to screenshots of Diei's Twitter and Instagram accounts.

57.     Diei does not identify herself as a student at the College of Pharmacy in any of the posts.

58.     Moreover, none of the posts identified by Chairperson George had any relation to the College of Pharmacy's curriculum.

59.     In the screenshots sent by Chairperson George to Diei, Diei used profanity and sexual commentary to express her viewpoints.

60.     For example, in the following tweet, Diei contributed to a trending discussion on Twitter about the song "WAP" by Cardi B featuring Megan Thee Stallion by suggesting lyrics for a possible remix:



61.     Diei's tweet was well within the normal bounds of discussion on social media. One week after Diei's tweet, the song "WAP" was number one on "Billboard's Hot 100" list and set a record for the most streamed song in the United States for an opening seven-day period with 93 million streams.

62.     In another tweet, Diei defended the lyrics of "WAP" against criticism from other users—who were arguing that those lyrics were inappropriate—by pointing out that humans are inherently sexual beings:



63.     And in another tweet, Diei joked about the amount of time she spends getting

prepared to go out for the evening by referencing the popular song "Partition" by Beyoncé:



64.     Chairperson George advised Diei that she had until Monday, August 31, 2020, at

9 a.m. to respond to the complaint.

65.     Although Chairperson George provided screenshots of Diei's social media

activity, Diei did not know what specific aspects of those screenshots were objectionable to

Chairperson George or the Committee.

66.     In response to the complaint, Diei asked Chairperson George if she could identify the "specific policy/guideline I have allegedly violated and exactly in what way I have allegedly violated it. If you are able to provide a direct link as to where the policy resides I would appreciate it as well. The UT literature I have access to is quite vague and I want to make sure [I] thoroughly understand what specific standards/rules are in question. This would help me in my defense."

67.     In response, Chairperson George did not provide a link to any specific policy or quote the language of any policy that Diei allegedly violated. Instead, she stated that Diei had agreed to "various professionalism codes" in the College of Pharmacy Handbook and Catalog.

68.     Diei responded by stating that she was "still confused" about the nature of the allegations against her, and she asked again "how specifically have I allegedly violated the standard, code, policy, guideline?"

69.     Chairperson George responded by stating that "[a]t this point, I think your questions regard the merits of the professionalism inquiry and are best left for the meeting next week."

70.     On August 29, 2020, Chairperson George informed Diei that she had to appear before the Committee on September 1, 2020 for another meeting concerning her social media posts.

71.     Despite not knowing what policy she allegedly violated or what content specifically violated this unknown policy, Diei worked over the weekend and provided a response to Chairperson George by 9 a.m. on Monday, August 31, 2020.

72.     The undersigned counsel also submitted a letter to Chairperson George on August 31, 2020, explaining that the Committee's actions violated Diei's First and Fourteenth Amendment rights.

73.     On Tuesday, September 1, 2020, Diei appeared alone before the Committee to defend herself.

74.     During the meeting, Diei again asked what policy she allegedly violated and what content specifically violated this unknown policy.

75.     In response, Chairperson George stated that the "sexual" and "crude" nature of Diei's posts violated the professionalism policies in the College of Pharmacy Handbook and Catalog.

76.     No Committee member provided a specific policy to Diei or quoted the language of any professionalism policies contained in the College of Pharmacy Handbook and Catalog.

77.     At the conclusion of the meeting, Diei still did not know what policy she allegedly violated or what content specifically violated this unknown policy.

78.     The next day, September 2, 2020, Chairperson George sent Diei the decision of the Committee.

79.     In the decision, Chairperson George once again referred generally to "professionalism policies" in the Handbook and Catalog but did not point to any specific provision.

80.     Chairperson George then wrote that Diei "appeared again before the Professional Conduct Committee on Tuesday, September 1, 2020 to address the recent issue of unprofessional posts to [her] social media accounts. Those posts again included material of a 'sexual' nature, as

well as 'crude' and 'vulgar' statements. Further, the public posts included an image identifying [Diei] as a member of the UTHSC College of Pharmacy."

81.     Diei is not aware of any post on her social media accounts that would identify her as Kimberly Diei, a student at the College of Pharmacy.

82.     Chairperson George then informed Diei that "the committee has determined that [her] conduct is a serious breach of the norms and expectations of the professions, and that [she] do[es] not meet the threshold of professional behavior or the requirements of the Technical Standards for students in the UTHSC College of Pharmacy. The Committee voted unanimously to academically dismiss [Diei] from the College of Pharmacy effective immediately."

83.     Chairperson George concluded the letter by advising Diei that she had two days to appeal the Committee's decision to Dean Chisholm-Burns.

84.     Diei was shocked by the Committee's decision to expel her for the content of her personal social media posts.

85.     Despite Chairperson George's references to the various professionalism policies in the UTHSC Handbook, Catalog, and "Technical Standards for students in the UTHSC College of Pharmacy[,]" Chairperson George had not provided Diei the text of these policies or explained how the allegedly "sexual," "crude," or "vulgar" nature of her personal social media content violated those policies.

86.     On September 2, 2020, Diei emailed Dean Chisholm-Burns asking for a fourteen (14) day extension of time to prepare material for her appeal.

87.     Diei requested the extension because she had just completed an exam, and she was mentally exhausted. Diei was also working at an internship at the time, and she was unsure if she would be able to complete the appeal and complete her internship work at the same time.

88.     Dean Chisholm-Burns denied Diei's request for an extension.

89.     On September 4, 2020, Diei submitted her appeal to Dean Chisholm-Burns.

90.     The undersigned counsel also submitted a letter to Dean Chisholm-Burns on September 4, 2020, advocating for her to reverse the Committee's unconstitutional action.

91.     From September 4, 2020, to September 25, 2020, Diei spoke with Dean Chisholm-Burns several times about her case and defended herself against expulsion.

92.     On September 25, 2020, Dean Chisholm-Burns informed Diei that she decided to reverse the Committee's decision to expel Diei.

93.     To this day, Diei does not know what policy she allegedly violated.

94.     Diei does not know what Chairperson George or the Committee considers to be too "sexual," "crude," or "vulgar" for doctoral students' personal social media activity so as to warrant investigation and punishment.

**Defendants' Actions Are Currently Restricting Diei's Ability to Engage in Protected Speech and Have Caused Damages to Diei.**

95.     Diei currently attends the College of Pharmacy and remains subject to the "various professionalism policies" enforced by the Committee.

96.     As a result of the Defendants' actions, Diei's speech has been objectively chilled because she is currently self-censoring her protected speech.

97.     Despite her attempts to self-censor, Diei is currently living with a reasonable fear that the Committee will open another investigation into her social media accounts and attempt to expel her or otherwise discipline her once again.

98.     At least once a day, Diei chooses not to post something to her social media accounts because she is afraid that the Committee will deem her post too "sexual," "crude," or "vulgar" and punish her.

99.     Without declaratory and injunctive relief from this Court, Diei will be forced to continue to self-censor her protected speech.

100.    As a direct and proximate cause of Defendants' actions, Diei has suffered emotional distress, humiliation, embarrassment, and injury to her reputation. Specifically, Diei believed for three weeks that she had been expelled from her doctoral program. As a result, Diei believed that her future as a professional had been destroyed by the unconstitutional actions of Defendants. Although Diei was not expelled, she continues to experience emotional distress to this day because she believes that the Committee is likely to investigate her speech in the future and impose disciplinary sanctions, including expulsion.

## FIRST CAUSE OF ACTION

### Violation of the First and Fourteenth Amendments
### Facial Overbreadth Challenge to "Professionalism" Policies (42 U.S.C. § 1983) –
### (Against All Defendants in Their Official Capacities)

101.    Plaintiff repeats and realleges each of the foregoing paragraphs in this Complaint.

102.    A regulation violates the First Amendment for overbreadth if "a substantial number of instances exist in which the [regulation] cannot be applied constitutionally." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (quoting *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012)).

103.    The College of Pharmacy's professionalism policies are unconstitutional on their face because they give complete discretion to Chairperson George and the Committee to punish a broad range of protected speech for no legitimate pedagogical reason.

104.    The College of Pharmacy's professionalism policies are also overly broad because they permit the College of Pharmacy to regulate the off-campus, personal speech of students for no legitimate pedagogical reason.

105.    As demonstrated above, the College of Pharmacy is policing the social media activity of its students and punishing any content it deems "unprofessional."

106.    President Boyd is the chief executive officer in charge of the UT system. President Boyd manages and directs all affairs of the UT system under the policies and regulations established by the Board. President Boyd is responsible for administering and enforcing policies and regulations relating to the operation of the College of Pharmacy, including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

107.    Defendant Chairperson George possesses administrative and enforcement authority over the College of Pharmacy's professionalism policies and is responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Diei's constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

108.    The members of the Board of Trustees "have full power and authority to make bylaws, rules, and regulations for the governance of the university and the promotion of education in the university that in the board's opinion may be expedient or necessary[,]" including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983. Tenn. Code Ann. § 49-9-209(e)(1); Tenn. Code Ann. § 49-9-209(d)(1)(I) ("The board of trustees shall . . . [a]pprove policies governing student conduct.").

109.    The denial of constitutional rights is an irreparable injury *per se*. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).

110.    By suppressing Diei's constitutionally protected speech, Defendants are inflicting an ongoing irreparable harm on her.

111.    Diei has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to her First Amendment Rights.

112.    Without declaratory and injunctive relief from this Court, Diei will suffer continuing and irreparable harm indefinitely.

## SECOND CAUSE OF ACTION

**Violation of the First and Fourteenth Amendment**
**Vagueness Challenge to "Professionalism" Policies (42 U.S.C. § 1983) –**
**(Against All Defendants in Their Official Capacities)**

113.    Plaintiff repeats and realleges each of the foregoing paragraphs in this Complaint.

114.    A regulation violates the Due Process Clause of the Fourteenth Amendment for vagueness if a person of ordinary intelligence cannot distinguish between permissible and prohibited conduct. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

115.    Defendants did not provide Diei with a copy of the policies she allegedly violated before being summoned to the Committee in 2019 and 2020, and the College of Pharmacy's website does not contain the "Standards for Student Professionalism Conduct."

116.    To this day, the College of Pharmacy has not provided any specific "professionalism" policies to Diei.

117.    Based upon the enforcement of the professionalism policies as described above, the College of Pharmacy's professionalism policies are unconstitutional on their face because they are so vague as to provide no basis for clear and consistent application.

20

118.     The College of Pharmacy's professionalism policies are also susceptible to discrimination based on viewpoint because they are intended to, and effectively do, suppress speech that Chairperson George and the Committee deem offensive.

119.     President Boyd is the chief executive officer in charge of the UT system. President Boyd manages and directs all affairs of the UT system under the policies and regulations established by the Board. President Boyd is responsible for administering and enforcing policies and regulations relating to the operation of the College of Pharmacy, including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

120.     Defendant Chairperson George possesses administrative and enforcement authority over the College of Pharmacy's professionalism policies and is responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Diei's constitutional rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

121.     The members of the Board of Trustees "have full power and authority to make bylaws, rules, and regulations for the governance of the university and the promotion of education in the university that in the board's opinion may be expedient or necessary[,]" including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the Fourteenth Amendment and 42 U.S.C. § 1983. Tenn. Code Ann. § 49-9-209(e)(1); Tenn. Code Ann. § 49-9-209(d)(1)(I) ("The board of trustees shall … [a]pprove policies governing student conduct.").

122.     The denial of constitutional rights is an irreparable injury *per se*. *See Elrod v. Burns*, 427 U.S. at 373.

123.    By suppressing Diei's constitutionally protected speech, Defendants are inflicting an ongoing irreparable harm on her.

124.    Diei has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to the rights under the First and Fourteenth Amendments.

125.    Without declaratory and injunctive relief from this Court, Diei will suffer continuing and irreparable harm indefinitely.

### THIRD CAUSE OF ACTION

**Violation of the First and Fourteenth Amendments**
**As-Applied Challenge Free-Speech Violation (42 U.S.C. § 1983) –**
**(Against All Defendants in Their Official Capacities)**

126.    Plaintiff repeats and realleges each of the foregoing paragraphs in this Complaint.

127.    The Sixth Circuit has held that university restrictions on professional student speech are unconstitutional unless the restrictions further a legitimate pedagogical interest. *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012). Additionally, the Supreme Court "has not recognized 'professional speech' as a separate category of speech" entitled to less protection under the First Amendment. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018). As a result, universities do not have a legitimate pedagogical interest in enforcing professionalism policies to censor speech because the First Amendment protects the expressive rights of professionals.

128.    Moreover, at a minimum, the Due Process Clause of the Fourteenth Amendment requires government officials to provide individuals with notice of what policy or law their conduct violates.

129.    Chairperson George violated Diei's clearly established constitutional rights by applying the vague and overly broad professionalism policies to punish her online, personal speech without providing the text of those policies to Diei.

130.    Diei's online, personal speech did not have anything to do with the College of Pharmacy's curriculum or school-sponsored activities.

131.    The College of Pharmacy had no pedagogical reason to censor Diei's online, personal speech. Specifically, the College of Pharmacy's actions did not better prepare Diei for any career in which she will use her degree.

132.    Chairperson George also violated Diei's clearly established constitutional rights by applying the vague and overly broad professionalism policies to punish her online, personal speech because of the allegedly "sexual," "crude," and "vulgar" viewpoints expressed in the speech.

133.    Chairperson George and the College of Pharmacy have no pedagogical reason to punish Diei for expressing allegedly "sexual," "crude," and "vulgar" viewpoints on her personal social media account.

134.    Chairperson George knew or reasonably should have known that the College of Pharmacy's policies, procedures, and practices would lead to this deprivation.

135.    Chairperson George knew that individuals under her supervision implemented the College of Pharmacy's policies, procedures, and practices that deprived Diei of her constitutional rights, and Chairperson George, with deliberate indifference, failed to act with regard to the constitutional rights of Diei.

136.    Defendants' unconstitutional conduct continues to chill Diei's right to engage in constitutionally protected speech on her social media accounts. Before Diei posts any content,

she considers whether her content may violate the College of Pharmacy's vague professionalism policies and result in her expulsion. However, Diei has no way to know if her content would violate the College of Pharmacy's professionalism policies because Chairperson George has not provided Diei with the text of those policies. As a result, Diei has self-censored her speech. This perfectly illustrates the Supreme Court's warning that "[t]he mere existence of . . . unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech . . . ." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

137.   Defendant Boyd is the chief executive officer in charge of the UT system. President Boyd manages and directs all affairs of the UT system under the policies and regulations established by the Board. President Boyd is responsible for the administration and enforcement of policies and regulations relating to the operation of the College of Pharmacy, including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

138.   Defendant George possesses administrative and enforcement authority over the College of Pharmacy's professionalism policies and is responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Diei's constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

139.   The members of the Board of Trustees "have full power and authority to make bylaws, rules, and regulations for the governance of the university and the promotion of education in the university that in the board's opinion may be expedient or necessary[,]" including those that directly resulted in the deprivation of Diei and other College of Pharmacy

students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983. Tenn. Code Ann. § 49-9-209(e)(1); Tenn. Code Ann. § 49-9-209(d)(1)(I) ("The board of trustees shall … [a]pprove policies governing student conduct.").

140.    As a direct and proximate result of Defendants' actions as described above, Diei was deprived of her constitutional rights. As a legal consequence of Defendants' violation of Diei's First and Fourteenth Amendment rights, which are irreparable injuries *per se*, Diei is entitled to declaratory and injunctive relief and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

**Violation of the First and Fourteenth Amendments**
**As-Applied Challenge Free-Speech Violation (42 U.S.C. § 1983) –**
**(Against Defendants Boyd and George in Their Individual Capacities)**

141.    Plaintiff repeats and realleges each of the foregoing paragraphs in this Complaint.

142.    As of 2012, the Sixth Circuit has held that university restrictions on professional student speech are unconstitutional unless the restrictions further a legitimate pedagogical interest. *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012). Additionally, as of 2018, the Supreme Court has held that "professional speech" is entitled to full protection under the First Amendment. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018). As a result, universities are on clear notice that they do not have a legitimate pedagogical interest in enforcing professionalism policies to censor speech because the First Amendment protects the expressive rights of professionals.

143.     Moreover, at a minimum, the Due Process Clause of the Fourteenth Amendment requires government officials to provide individuals with notice of what policy or law their conduct violates.

144.     Chairperson George violated Diei's clearly established constitutional rights by applying the vague and overly broad professionalism policies to punish her online, personal speech without providing the text of those policies to Diei.

145.     Diei's online, personal speech did not have anything to do with the College of Pharmacy's curriculum or school-sponsored activities.

146.     The College of Pharmacy had no pedagogical reason to censor Diei's online, personal speech. Specifically, the College of Pharmacy's actions did not better prepare Diei for any career in which she will use her degree.

147.     Chairperson George also violated Diei's clearly established constitutional rights by applying the vague and overly broad professionalism policies to punish her online, personal speech because of the allegedly "sexual," "crude," and "vulgar" viewpoints expressed in the speech.

148.     Chairperson George and the College of Pharmacy Diei have no pedagogical reason to punish Diei for expressing allegedly "sexual," "crude," and "vulgar" viewpoints on her personal social media account.

149.     Chairperson George knew or reasonably should have known that the College of Pharmacy's policies, procedures, and practices would lead to this deprivation.

150.     Chairperson George knew that individuals under her supervision implemented the College of Pharmacy's policies, procedures, and practices that deprived Diei of her constitutional

rights, and Chairperson George, with deliberate indifference, failed to act with regard to the constitutional rights of Diei.

151.    Defendants' unconstitutional conduct continues to chill Diei's right to engage in constitutionally protected speech on her social media accounts. Before Diei posts any content, she considers whether her content may violate the College of Pharmacy's vague professionalism policies and result in her expulsion. However, Diei has no way to know if her content would violate the College of Pharmacy's professionalism policies because Chairperson George has not provided Diei with the text of those policies. As a result, Diei has self-censored her speech. This perfectly illustrates the Supreme Court's warning that "[t]he mere existence of . . . unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech . . . ." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. at 757.

152.    Defendant Boyd is the chief executive officer in charge of the UT system. President Boyd manages and directs all affairs of the UT system under the policies and regulations established by the Board. President Boyd is responsible for the administration and enforcement of policies and regulations relating to the operation of the College of Pharmacy, including those that directly resulted in the deprivation of Diei and other College of Pharmacy students' constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

153.    Defendant George possesses administrative and enforcement authority over the College of Pharmacy's professionalism policies and is responsible for the implementation and enforcement of those policies, which directly resulted in the deprivation of Diei's constitutional rights under the First Amendment to the Constitution, as applied to the states by the Fourteenth Amendment and 42 U.S.C. § 1983.

154.     As a direct and proximate cause of Defendants' actions, Diei has suffered emotional distress, humiliation, embarrassment, and injury to her reputation.

155.     As a direct and proximate result of Defendants' actions as described above, Diei was deprived of her constitutional rights. As a legal consequence of Defendants' violation of Diei's First and Fourteenth Amendment rights, which are irreparable injuries *per se*, Diei is entitled to declaratory and injunctive relief, damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees. Diei is seeking monetary damages against Chairperson George and President Boyd in their individual capacities.

## FIFTH CAUSE OF ACTION

### First Amendment Retaliation Under 42 U.S.C. § 1983 – (Against Chairperson George in her Official and Individual Capacities)

156.     Plaintiff repeats and realleges each of the foregoing paragraphs in this Complaint.

157.     Chairperson George's investigation and punishment of Diei in September 2019 were retaliatory actions against Diei because of her First Amendment protected speech, as more fully discussed above.

158.     Chairperson George's investigation and vote to dismiss Diei from the College of Pharmacy in September 2020 were also retaliatory actions against Diei because of her First Amendment protected speech, as more fully discussed above.

159.     Chairperson George cannot identify any non-retaliatory reason for the actions described in Paragraphs 34 to 46 and 55 to 85.

160.     The actions of Chairperson George described in Paragraphs 34 to 46 and 55 to 85 have chilled and continue to chill Diei's exercise of her right to engage in expressive First Amendment activity.

161.     The actions of Chairperson George described in Paragraphs 34 to 46 and 55 to 85 would chill any student of ordinary firmness from exercising their right to engage in expressive First Amendment activity.

162.     Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

163.     Chairperson George violated Diei's clearly established constitutional rights, of which any reasonable college official should have known, rendering her liable to Diei under 42 U.S.C. § 1983.

164.     As a direct and proximate cause of Chairperson George's actions, Diei has suffered emotional distress, humiliation, embarrassment, and injury to her reputation.

165.     As a direct and proximate result of Chairperson George's actions as described above, Diei was deprived of her constitutional rights. As a legal consequence of Chairperson George's violation of Diei's First and Fourteenth Amendment rights, which are irreparable injuries *per se*, Diei is entitled to declaratory and injunctive relief, damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees. Diei is seeking monetary damages only against Chairperson George in her individual capacity.

## PRAYER FOR RELIEF

WHEREFORE, Diei respectfully requests that the Court enter judgment against Defendants and provide Plaintiff the following relief:

A.     A declaratory judgment stating that the College of Pharmacy's professionalism policies are unconstitutionally overbroad on their face under the First and Fourteenth Amendments to the Constitution of the United States;

B.      A declaratory judgment stating that the College of Pharmacy failed to provide notice of the professionalism policies that Diei allegedly violated and that those policies are unconstitutionally vague on their face under the Fourteenth Amendments to the Constitution of the United States;

C.      A declaratory judgment stating that the College of Pharmacy's professionalism policies as-applied to Diei are unconstitutional, and that they violated Diei's rights as guaranteed under the First and Fourteenth Amendments to the Constitution of the United States;

D.      A declaratory judgment stating that George unconstitutionally retaliated against Diei because of Diei's protected speech under the First and Fourteenth Amendments to the Constitution of the United States;

E.      A permanent injunction restraining the enforcement of the College of Pharmacy's professionalism policies as-applied to Diei;

F.      A permanent injunction restraining the enforcement of the College of Pharmacy's professionalism policies;

G.      Monetary damages in an amount to be determined by the Court to compensate Diei for Defendants' unconstitutional interference with her rights under the First and Fourteenth Amendments to the Constitution of the United States. Specifically, Diei has suffered emotional distress as a result of Defendants' actions;

H.      An award of attorneys' fees and costs under 42 U.S.C. § 1988 and other applicable law; and

I.      All other further legal and equitable relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

166.    Plaintiffs demand a trial by jury on all claims triable by a jury in this lawsuit.

**DATED:**    **February 3, 2021**

Respectfully Submitted:

*/s/ Greg H. Greubel*
GREG HAROLD GREUBEL
PA Bar No. 321130; NJ Bar No. 171622015
KATLYN A. PATTON
PA Bar No. 328353; OH Bar No. 097911
(subject to admission *pro hac vice*)
FOUNDATION FOR INDIVIDUAL RIGHTS IN
EDUCATION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
greg.greubel@thefire.org
katlyn.patton@thefire.org

*Attorneys for Plaintiff Kimberly Diei*

/s/: Edd L. Peyton
EDD PEYTON
TN Bar No. 25635
SPICER RUDSTROM, PLLC
119 South Main, Suite 700
Memphis, Tennessee 38103
Tel: (901) 522-2313
Fax: (901) 526-0213
epeyton@spicerfirm.com