## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

| | | |
|---|---|---|
| **KIMBERLY DIEI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:21-cv-02071-JTF-cgc** |
| | ) | |
| **RANDY BOYD, ET AL.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE OFFICIAL CAPACITY DEFENDANTS' MOTION TO DISMISS THE FIRST, SECOND, AND THIRD CAUSES OF ACTION

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................. ii

INTRODUCTION AND SUMMARY ................................................................ 1

STATEMENT OF FACTS ............................................................................... 2

ARGUMENT .................................................................................................. 2

    I.    UTHSC'S PROFESSIONALISM RULE IS CONSTITUTIONAL
           *AS APPLIED*, AND THE COURT SHOULD DISMISS
           THE THIRD CAUSE OF ACTION .................................................... 3

    II.   UTHSC'S PROFESSIONALISM RULE IS *FACIALLY* VALID, AND
           THE COURT SHOULD DISMISS THE FIRST AND SECOND
           CAUSES OF ACTION ..................................................................... 4

        A. The University May Lawfully Require Professional Students
           To Abide by Professional Standards. ........................................... 5

        B. The College of Pharmacy's Professionalism Rule Is Facially Valid. ............. 6

           1.   The State of Tennessee's Professional Standards for Pharmacists. ......... 7

           2.   The University of Tennessee's Professional Standards for Pharmacy
               Students. ................................................................................. 8

           3.   Ms. Diei Cannot Carry Her Burden To Show that UTHSC's
               Professionalism Rule Is Facially Invalid. ............................... 10

CONCLUSION ............................................................................................ 15

## TABLE OF AUTHORITES

<u>**Cases**</u>

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) ...........................................................4

*Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) ............6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................13

*Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014) ..............................................................4

*Citizens in Charge, Inc. v. Husted*, 810 F.3d 437 (6th Cir. 2016) ................................10

*Connection Distributing Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009) (en banc).......................2, 6

*Cope v. Anderson*, 331 U.S. 461 (1947) .........................................................................3

*Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003 (6th Cir. 2009) .....................13

*Ex Parte Young*, 209 U.S. 123 (1908) ............................................................................3

*Fletcher's Gin, Inc. v. Crihfield*, 423 F.2d 1066, 1068 (6th Cir. 1970)....................... 3-4

*Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986)..............................................................4

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) ...................................14

*Hunt v. Board of Regents of the University of New Mexico*,
792 Fed. Appx. 595 (10th Cir. 2019).........................................................................6, 11

*Int'l Ass'n of Machinists & Aerospace Workers v. TVA*, 108 F.3d 658 (6th Cir. 1997).................3

*Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016)................................................................6

*Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011)............................................6

*Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003)...............................................................5

*Madison v. Wood*, 410 F.2d 564 (6th Cir. 1969) ............................................................3

*National Institute of Family and Live Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ...............5, 6

*Oyama v. University of Hawaii*, 813 F.3d 850 (9th Cir. 2015).................................... 5-6

*Richmond v. Fowlkes*, 228 F.3d 854 (8th Cir. 2000) ......................................................6

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) .......................................................................14

*Tennessean v. Metropolitan Government of Nashville*, 485 S.W.3d 857 (Tenn. 2016) ...............10

*Virginia v. Hicks*, 539 U.S. 113 (2003)......................................................................................10

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976).............5

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012) ................................................................. 3, 5, 6-7

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .......................................... 7, 11-12, 13

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) ..............6

*Yoder v. University of Louisville*, 526 Fed. Appx. 537 (6th Cir. 2013)..........................................6

## **Statutes**

1982 Pub. Acts, c. 874, § 20 (April 8, 1982) ..............................................................................10

2009 Pub. Acts, c. 566, § 13 (July 1, 2009)................................................................................10

Tenn. Code Ann. § 4-5-202 .........................................................................................................7

Tenn. Code Ann. § 4-5-205 .........................................................................................................7

Tenn. Code Ann. § 4-5-211 .....................................................................................................7, 10

Tenn. Code Ann. § 28-3-104(a)(1)(B) .........................................................................................3

Tenn. Code Ann. § 49-7-2401 ...................................................................................................11

Tenn. Code Ann. § 49-7-2405(a)(3) .....................................................................................11, 14

Tenn. Code Ann. § 49-9-101 .......................................................................................................8

Tenn. Code Ann. § 49-9-209(e)(1) ..............................................................................................8

Tenn. Code Ann. § 63-10-202 .....................................................................................................6

Tenn. Code Ann. § 63-10-301 .....................................................................................................6

Tenn. Code Ann. § 63-10-304(c)..................................................................................................7

Tenn. Code Ann. § 63-10-305(6)..............................................................................................7, 9

**<u>Administrative Procedure Act Rules</u>**

TENN. COMP. R. & REGS., Rule 1140-02-.01 ...............................................................8, 9

TENN. COMP. R. & REGS., Rule 1720-3-5-.01 ............................................................ 8-14 *passim*

## INTRODUCTION AND SUMMARY

The Plaintiff Kimberly Diei's lawsuit asserts two different sets of claims against two different types of defendants.  The First, Second, and Third Causes of Action seek declaratory and injunctive relief against a number of University of Tennessee Board members and employees in their official capacities. The Fourth and Fifth Causes of Action seek damages from two University employees – University System President Randy Boyd and University of Tennessee Health Science Center ("UTHSC") College of Pharmacy Associate Professor Christa George – in their individual capacities.  By separate motion (ECF#24), the Individual Capacity Defendants have moved to dismiss Ms. Diei's damages claims.  Because as-applied challenges to the constitutionality of state laws should be addressed before facial challenges, that motion, which addresses the application of UTHSC's Professionalism Rule to Ms. Diei and shows how that application gives rise to no claim for damages against the Individual Capacity Defendants, should be addressed before this one.  As shown below, Ms. Diei also asserts no valid claim for declaratory or injunctive relief against the Official Capacity Defendants.  In addition to being lawful as-applied, UTHSC's Professionalism Rule, which implements state statutes and administrative regulations, is facially valid.  This lawsuit should be dismissed.  In summary:

| Cause of Action | First | Second | Third | Fourth | Fifth |
|---|---|---|---|---|---|
| Type of Claim | Facial Invalidity – Overbreadth | Facial Invalidity – Vagueness | As-Applied Challenge | As-Applied Challenge | Retaliation |
| Type of Defendant | Official Capacity | Official Capacity | Official Capacity | Individual Capacity | Individual Capacity |
| Type of Relief Sought | Declaratory / Injunctive | Declaratory / Injunctive | Declaratory / Injunctive | Damages | Damages |
| Applicable Motion and Sequence | This Motion – Should Be Addressed Second | | | Individual Capacity Defendants' Motion to Dismiss – Should Be Addressed First | |

## STATEMENT OF FACTS

The Official Capacity Defendants incorporate by reference the Statement of Facts in the Memorandum of Law in Support of the Individual Capacity Defendants' Motion to Dismiss the Fourth and Fifth Causes of Action in the Complaint (ECF#24-1) (the "Individual Capacity Defendants' Memorandum").

## ARGUMENT

Ms. Diei alleges in her First and Second Causes of Action that the University's Professional Rule is ***facially*** invalid. Her Third Cause of Action alleges that UTHSC's Professionalism Rule is unconstitutional and should be enjoined ***as applied***. "[T]he usual judicial practice is to address an as-applied challenge before a facial challenge," primarily because "this sequencing decreases the odds that facial attacks will be addressed unnecessarily and because this approach avoids encouraging gratuitous wholesale attacks upon state . . . laws." *Connection Distributing Co. v. Holder,* 557 F.3d 321, 328 (6th Cir. 2009) (en banc) (internal quotation marks omitted).  Accordingly, Section I below addresses the as-applied challenge, and then Section II addresses the facial challenge.

I.  **UTHSC'S PROFESSIONALISM RULE IS CONSTITUTIONAL *AS APPLIED*, AND THE COURT SHOULD DISMISS THE THIRD CAUSE OF ACTION.**

The Third Cause of Action is exactly the same as the Fourth Cause of Action except that it is an official capacity claim seeking declaratory and injunctive relief while the Fourth Cause of Action is an individual capacity claim seeking damages.  For most of the same reasons that the Fourth Cause of Action should be dismissed, so should the Third Cause of Action, because the underlying claim is without legal merit.[1]  In summary:

First, any claim based on the allegations regarding Ms. Diei's 2019 appearance before the Professionalism Committee is time-barred.  The statute of limitations is one year. Tenn. Code Ann. 28-3-104(a)(1)(B).  The Complaint discloses on its face that the 2019 event was complete in October 2019 (¶ 47), over a year before this lawsuit was filed.  This requires dismissal not only of her claim for damages, but also her claim for injunctive and declaratory relief.  Under the concurrent remedy rule, "equity will withhold its relief . . . where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson*, 331 U.S. 461, 464 (1947). *See Madison v. Wood*, 410 F.2d 564, 567-68 (6th Cir. 1969) (injunctive relief); *Int'l Ass'n of Machinists & Aerospace Workers v. TVA*, 108 F.3d 658, 668 (6th Cir. 1997) (declaratory judgment); *Fletcher's Gin, Inc. v. Crihfield*, 423 F.2d 1066, 1068 (6th Cir. 1970)

---

[1] There is substantial but not complete overlap between the Individual Capacity Defendants' arguments to dismiss the Fourth Cause of Action and the Official Capacity Defendants' arguments to dismiss the Third Cause of Action.  The Official Capacity Defendants incorporate Argument Sections I.A, I.B.1, I.B.2, and I.B.3 of the Individual Capacity Defendants' Memorandum.  However, Section 1.B.4 and Section II of the Individual Capacity Defendants' Memorandum are ***not*** relied upon for the official capacity claims.  While no damages claim can be asserted against President Boyd in his individual capacity absent allegations of wrongdoing against him (Section I.B.4), as President he is an appropriate official capacity defendant for an injunctive relief claim under *Ex Parte Young*, 209 U.S. 123 (1908).  And regarding Section II, which asserts qualified immunity, that doctrine "shields government officials from monetary damages, not from injunctive relief." *Ward v. Polite*, 667 F.3d 727, 742 (6th Cir. 2012).

("The District Court found that the three year statute of limitations applied and that since equity follows the law plaintiff's equitable relief was barred as was his legal relief.").  Even if the claim had been timely filed it is without merit.  Ms. Diei's action in removing her breast from her shirt as part of a social media post was not speech protected by the First Amendment.  And the University took no adverse action against Ms. Diei – she was merely assigned to write a three-page paper reflecting on the incident, a lawful educational activity.  Any claim based on the 2019 event should be dismissed.

Second, the allegations regarding Ms. Diei's 2020 appearance before the Professionalism Committee state no claim for relief because the University took no adverse action against her – she alleges that she was "nearly expelled," but in fact "was not expelled" because she "successfully appealed her expulsion." (Complaint, ¶¶ 1, 3, 100).  The College of Pharmacy's final decision and ultimate act was not adverse to Ms. Diei, requiring dismissal of her claim. *Benison v. Ross*, 765 F.3d 649 (6th Cir. 2014); *Harris v. Blake*, 798 F.2d 419 (10th Cir. 1986).

Third, Ms. Diei's allegation that the Professionalism Committee violated the First Amendment by investigating complaints made about her by others states no claim for relief because it does not violate the First Amendment to investigate such complaints. *See Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018).

Because the Third Cause of Action is without merit, it should be dismissed, as there is no basis for the issuance of declaratory or injunctive relief.

## II.   UTHSC'S PROFESSIONALISM RULE IS *FACIALLY* VALID, AND THE COURT SHOULD DISMISS THE FIRST AND SECOND CAUSES OF ACTION.

The UTHSC Professionalism Rule applicable to Ms. Diei as a College of Pharmacy student is nested within a larger context of state regulation of pharmacists, accreditation standards, the long-time standard practice of American colleges of pharmacy to teach and require

adherence to professional standards, and substantial case law upholding professional schools'
requiring students' adherence to professional standards.  The application of the Professionalism
Rule is constrained within appropriate boundaries, and it is not vague or overbroad.  It is facially
valid.

### A.    The University May Lawfully Require Professional Students To Abide by Professional Standards.

"States may regulate professional conduct, even though that conduct incidentally
involves speech." *National Institute of Family and Live Advocates v. Becerra*, 138 S. Ct. 2361,
2372 (2018).  And institutions of professional higher education may impose professionalism
standards upon their students, requiring their students to adhere to the professional standards of
the profession they are preparing to enter. Indeed, it has long been standard for pharmacy
students in particular to be "trained in the ethics of the profession." *Virginia Pharmacy Board v.
Virginia Citizens Consumer Council*, 425 U.S. 748, 751 (1976). A university's teaching and
requiring adherence to such professional standards serves a "legitimate pedagogical concern in
teaching its students to comply with" the code of ethics in their field. *Keeton v. Anderson-Wiley*,
664 F.3d 865, 876 (11th Cir. 2011). In addition, assessment of a student's professionalism
involves an institutional discharge of a responsibility toward society, for professional
"certification programs are designed to ensure that . . . students meet the professional standards
in their chosen fields," such that when a university "communicates to the world that, in its view,
that student is fit to practice the profession . . . , the [u]niversity places its 'imprimatur' on each
student it approves." *Oyama v. University of Hawaii*, 813 F.3d 850, 862, 870 (9th Cir. 2015).
And students "are not forced to be there," *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012) –
that is, by deciding to enter a profession and attend a school to prepare them for licensure in that
profession, they are choosing to voluntarily submit to the regulation of that profession.

In a series of federal appellate decisions detailed in the Individual Capacity Defendants' Memorandum,[2] the courts have established that (1) institutions of higher education may require their professional students to adhere to the professional standards of the profession they are preparing to enter; (2) those professional standards may regulate conduct that involves speech; and (3) the speech that may be permissibly regulated includes off-campus, on-line speech such as social media posts.

### B.   The College of Pharmacy's Professionalism Rule Is Facially Valid.

In her First and Second Causes of Action, Ms. Diei alleges that the University's Professionalism Rule is facially unconstitutional as overbroad and too vague.  In general, "facial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008); *see also Connection Distributing Co. v. Holder*, 557 F.3d 321, 335-36, 341 (6th Cir. 2009) (en banc) (explaining why facial invalidation is "strong medicine" with significant social costs that should be used only as a "last resort").  As noted above, "States may regulate professional conduct, even though that conduct incidentally involves speech." *Becerra*, 138 S. Ct. at 2372.  And as held by the Eighth Circuit, "viewpoint-neutral professional codes of ethics are a legitimate part of a professional school's curriculum that do not, ***at least on their face***, run afoul of the First Amendment." *Keefe, supra*, 840 F.3d at 530 (emphasis added); *see, e.g., Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012) ("***On its face***, the [American Counseling

---

[2] *See Hunt v. Board of Regents of the University of New Mexico*, 792 Fed. Appx. 595 (10th Cir. 2019), *cert. denied*, 2020 WL 6829148 (2020); *Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016); *Oyama v. University of Hawaii*, 813 F.3d 850 (9th Cir. 2015); *Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015); *Yoder v. University of Louisville*, 526 Fed. Appx. 537 (6th Cir. 2013); *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011); *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003); *Richmond v. Fowlkes*, 228 F.3d 854 (8th Cir. 2000).

Association's] code of ethics sets forth neutral and generally applicable policies" (emphasis added)).  Ms. Diei's facial challenge demands more prescriptive specificity of professionalism standards than the law requires, for "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  The College's Professionalism Rule, as well as the state statutes and regulations on which it is based, are ***facially*** valid.

### 1.    The State of Tennessee's Professional Standards for Pharmacists.

The Tennessee General Assembly has declared that "[t]he practice of pharmacy within the state is . . . a professional practice affecting public health, safety and welfare and is subject to regulation and control in the public interest." Tenn. Code Ann. § 63-10-202.  To this end, the General Assembly created a Board of Pharmacy. Tenn. Code Ann. § 63-10-301 *et seq*.  By statute the Board is authorized to deny or revoke licensure on a number of specifically defined bases, including that the person has been guilty of "unethical or unprofessional conduct." Tenn. Code Ann. § 63-10-305(6).  Additionally, the Board "has the power and authority to adopt, amend and repeal rules of professional conduct appropriate to the establishment and maintenance of a high standard of integrity and dignity in the profession of pharmacy." Tenn. Code Ann. § 63-10-304(c).  Exercising its statutory authority, the Tennessee Board of Pharmacy has adopted a "Professional Conduct and Responsibilities" rule governing pharmacists and pharmacy interns.  TENN. COMP. R. & REGS., Rule 1140-02-.01.  This Rule was enacted pursuant to the Tennessee Uniform Administrative Procedure Act, meaning that it went through an extensive process of public input and review for lawfulness by the Tennessee Attorney General.  *See* Tenn. Code Ann. §§ 4-5-202, -205, -211.  One provision of the Board of Pharmacy's Rule is:

> A pharmacist shall observe the law, uphold the dignity and honor of the profession, and accept its ethical principles.  A pharmacist shall not engage in any

7

activity that will bring discredit to the profession, and shall expose, without fear or favor, illegal or unethical conduct in the profession.

Tenn. Comp. R. & Regs., Rule 1140-02-.01(4).

### 2.   The University of Tennessee's Professional Standards for Pharmacy Students.

The University of Tennessee is a public institution created by Tennessee statutes. *See* Tenn. Code Ann. § 49-9-101 *et seq.* The University is governed by a Board of Trustees which has "full power and authority to make bylaws, rules and regulations for the government of the university and the promotion of education in the university that in the Board's opinion may be expedient or necessary." Tenn. Code Ann. § 49-9-209(e)(1). Pursuant to its statutory authority, the University's Board of Trustees has enacted, through the APA rulemaking process, a rule for UTHSC entitled "Maintenance of Ethical and Professional Standards." Tenn. Comp. R. & Regs., Rule 1720-3-5-.01.

UTHSC's Professionalism Rule generally incorporates the State Board of Pharmacy standards by requiring UTHSC students to "maintain the high ethical and professional standards of the various disciplines of the health profession." Tenn. Comp. R. & Regs., Rule 1720-3-5-.01. UTHSC's Professionalism Rule then specifically adopts a modified form of specific parts of the state statute and State Board of Pharmacy standards, stating:

(1) A student enrolled at The University of Tennessee Health Science Center is subject to disciplinary action up to and including suspension and dismissal for engaging in the following acts of misconduct, regardless of whether such misconduct is engaged in on or off University-owned or -controlled property:

* * *

(d) . . . [U]nprofessional and unethical conduct which would bring disrepute and disgrace upon both student and profession and which would tend to substantially reduce or eliminate the student's ability to effectively practice the profession in which discipline he or she is enrolled.

8

Tenn. Comp. R. & Regs., Rule 1720-3-5-.01(1)(d).  This UTHSC Professionalism Rule tracks – and adds to – the Tennessee statute forbidding "unethical or unprofessional conduct," Tenn. Code Ann. § 63-10-305(6), and the Tennessee Board of Pharmacy Rule quoted above. Tenn. Comp. R. & Regs., Rule 1140-02-.01(4) ("[a] pharmacist shall not engage in any activity that will bring discredit to the profession").  UTHSC's APA Professionalism Rule contained in Tenn. Comp. R. & Regs., Rule 1720-3-5-.01 is also set out verbatim in UTHSC's student handbook, *CenterScope* (available at [http://catalog.uthsc.edu/content.php?catoid=33&navoid=3383#Maintenance_of_Ethical%20and_Professional_Standards_of_the_Health_Professions](http://catalog.uthsc.edu/content.php?catoid=33&navoid=3383#Maintenance_of_Ethical%20and_Professional_Standards_of_the_Health_Professions)):

## Standards of the Health Professions

Failure to maintain the high ethical and professional standards of the various disciplines of the health professions may subject a student to suspension or other appropriate remedial action by the University.

A. A student enrolled at The University of Tennessee Health Science Center is subject to disciplinary action up to, and including, suspension and dismissal for engaging in the following acts of misconduct, regardless of whether such misconduct is engaged in, on, or off, University- owned or controlled property;

1. Commission of an offense classified as a felony by Tennessee's criminal statutes or by Federal criminal statutes.
2. Unlawful use, possession, or sale of drugs or narcotics, whether or not felonious.
3. Plagiarism, falsification of records, or other act which substantially impugns the integrity of the student.
4. Other unprofessional and unethical conduct which would bring disrepute and disgrace upon both student and profession and which would tend to substantially reduce or eliminate the student's ability to effectively practice the profession in which discipline he or she is enrolled.

B. A student applying for admission to The University of Tennessee Health Science Center shall also be subject to the above provisions and may be denied admission on the basis of his or her failure to maintain the aforementioned ethical and professional standards.

UTHSC's Professionalism Rule not only implements Tennessee statutes and administrative rules, but also fulfills requirements of the College of Pharmacy's accrediting body.  Standard 4 of the Accreditation Council for Pharmacy Education covers "Personal and Professional Development," and Standard 4.4. specifically requires the teaching of

professionalism so that the graduate is able to "exhibit behaviors and values that are consistent with the trust given to the profession by patients, other healthcare providers, and society." (available at https://www.acpe-accredit.org/pdf/Standards2016FINAL.pdf)

### 3. Ms. Diei Cannot Carry Her Burden To Show that UTHSC's Professionalism Rule Is Facially Invalid.

In considering the facial validity of the UTHSC Professionalism Rule and the underlying statute and rule on which it is based, it is necessary to put these items into an appropriate context.

First, on its face the Professionalism Rule does not specifically regulate speech, but rather aims at "conduct." TENN. COMP. R. & REGS., Rule 1720-3-5-.01(1)(d). "Rarely, if ever, will an over-breadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Second, the statute and administrative rules are laws of the State of Tennessee, *Tennessean v. Metropolitan Government of Nashville*, 485 S.W.3d 857, 865-66 (Tenn. 2016), and as such they carry a presumption of constitutionality. *See, e.g., Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016) (a "presumption of constitutionality accompanies [the] enactments" of state legislatures); Tenn. Code Ann. § 4-5-211 (the rules had their legal validity examined and approved by the Tennessee Attorney General when they were enacted).[3]

---

[3] The wording of the statute has changed slightly over time, but has always required Attorney General review for legality. *See* 2009 Pub. Acts, c. 566, § 13 (July 1, 2009) ("[t]he office of the attorney general and reporter shall review the legality and constitutionality of every rule filed pursuant to this section and shall approve and disapprove of rules based upon the attorney general's determination of the legality of such rules"); 1982 Pub. Acts, c. 874, § 20 (April 8, 1982) ("No rule shall be filed in the secretary of State's office until such rule has been approved as to its legality by the Attorney General").

Third, there are two limiting constructions imposed by Tennessee state law that set boundaries in applying UTHSC's Professionalism Rule that must be taken into account when interpreting the Rule.  The first is the Tennessee Campus Free Speech Protection Act, a statute passed by the Tennessee General Assembly in 2017. Tenn. Code Ann. § 49-7-2401 *et seq*. Among other things, it provides that Tennessee public institutions of higher education, such as UTHSC, "shall be committed to maintaining a campus as a marketplace of ideas for all students . . . in which the free exchange of ideas is not to be suppressed because the ideas put forth are thought by some or even by most members of the institution's community to be offensive, unwise, immoral, indecent, disagreeable, conservative, liberal, traditional, radical, or wrong-headed." Tenn. Code Ann. § 49-7-2405(a)(3).  The second limiting construction is that, in adopting its Rule, the University tailored the Pharmacy Board's rule by proscribing not merely unprofessional and unethical conduct that would bring disgrace, disrepute, or discredit upon the pharmacy profession, but also – by using an "and" – required that the activity "tend to substantially reduce or eliminate the student's ability to effectively practice the profession" of pharmacy. TENN. COMP. R. & REGS., Rule 1720-3-5-.01(1)(d).  The rationale for allowing restrictions on a professional student's conduct, including in some cases speech, is that the institution is simply "[r]equiring a graduate student to meet standards of professionalism that would be expected of him upon his entry into the profession." *Hunt*, 792 Fed. Appx. at 605. Thus, standards of professionalism are upheld as lawful when they have a reasonable nexus to the profession by tying a student's conduct to the student's ability to properly carry out the duties of the profession at issue.

As a fourth contextual matter, the Supreme Court has held that "[a]dministrative interpretation and implementation of a regulation are, of course highly relevant to our analysis"

in evaluating the facial validity of a rule. *Ward v. Rock Against Racism*, 491 U.S. at 795. UTHSC's Professionalism Rule has been in place unchanged since 2001.  Apart from Ms. Diei's own situation, the Complaint does not allege any instances, during those two decades, when the University is alleged to have used the Professionalism Rule to violate anyone's free speech rights.  And as to her own situation, the Defendants respectfully submit that she has not provided an example of the College of Pharmacy using the Professionalism Rule to violate free speech rights because the College lawfully assigned her an educational activity in 2019 and in 2020 the College's final decision was to take no action against her. Thus, the administrative interpretation and implementation of UTHSC's Professionalism Rule that is revealed by the Complaint does not establish that it has been applied in a way that punishes free speech rights.

Indeed, this lawsuit provides a good example of the constraints present on the face of UTHSC's Professionalism Rule.  As an example, one of Ms. Diei's social media postings about which a complaint was made in 2020 is as follows:



(Individual Capacity Defendants' Memorandum, Exhibit 7, ECF#24-8, PageID 245).  Whether Ms. Diei agrees or disagrees that pharmacists conversing in this manner would "bring disrepute and disgrace upon both [the] student and [the] profession [of pharmacy]," Tᴇɴɴ. Cᴏᴍᴘ. R. & Rᴇɢs., Rule 1720-3-5-.01(1)(d), the point is: That alone would not be enough.  UTHSC's Professionalism Rule does not say that a student will be expelled simply for bringing the pharmacy profession into disrepute and disgrace.  There is also an "and" – "***and*** which would

tend to substantially reduce or eliminate the student's ability to effectively practice the profession [of pharmacy]." *Id*.  Absent a determination that this second requirement, a nexus between Ms. Diei's conduct and her ability to effectively practice the profession of pharmacy, was met, the face of UTHSC's Professionalism Rule would not call for her expulsion for a social media post such as that pictured above.  And here she was not expelled for it.  *See* Complaint, ¶ 100 ("Diei was not expelled").

All of the foregoing points in favor of upholding the facial validity of UTHSC's Professionalism Rule.  Two things cited by Ms. Diei in support of her argument to facially invalidate the Professionalism Rule do not support such an outcome.

First, Ms. Diei's Complaint alleges that the University has "complete discretion" to punish speech. (Compl. ¶ 103).  That is incorrect.  As the legal requirements outlined above show, the University does not have unbridled discretion in how to apply the Professionalism Rule.  That means that this is not a case where a plaintiff may rely on an "unconstrained grant of regulatory authority" argument to mount a facial challenge. *Ward v. Rock Against Racism, supra*, 491 U.S. at 794 ("Since respondent does not claim that city officials enjoy unguided discretion to deny the right to speak altogether, it is open to question whether respondent's claim falls within the narrow class of permissible facial challenges to allegedly unconstrained grants of regulatory authority.").  In other words, Ms. Diei's allegation of "complete discretion" is not an allegation of fact, but rather an assertion of a legal conclusion.  Parts of the Complaint that "are no more than conclusions … are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  A court is required to accept as true only the "non-conclusory allegations in the complaint," *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009), and

"need not accept as true legal conclusions or unwarranted factual inferences." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Second, Ms. Diei relies on *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) (cited in ¶ 102 of the Complaint). *Speet* is inapposite. It involved a law that criminalized begging, resulting in hundreds of prosecutions. The Sixth Circuit held that begging is itself protected speech, and as a result the law "simply ban[ned] an entire category of activity that the First Amendment protects." *Id*. at 879. The criminal law context, not present here, was also important to the court. *Id*. at 878. *Speet* bears no resemblance to this lawsuit.

In sum, Ms. Diei cannot satisfy her burden to overcome the presumption of constitutionality enjoyed by UTHSC's Professionalism Rule, and she cannot satisfy her burden to demonstrate that it, and by implication the Tennessee statute and Board of Pharmacy Rule on which it is based, are facially invalid. UTHSC's Professionalism Rule on its face regulates "conduct," and is not specifically directed at speech. The Tennessee Campus Free Speech Protection Act constrains UTHSC's ability to use its Professionalism Rule to restrict speech simply because the speech is "offensive, unwise, immoral, indecent, disagreeable, conservative, liberal, traditional, radical, or wrong-headed." Tenn. Code Ann. § 49-7-2405(a)(3). UTHSC may not use its Professionalism Rule to restrict disreputable and disgraceful speech that does not "tend to substantially reduce or eliminate the student's ability to effectively practice the profession" of pharmacy. TENN. COMP. R. & REGS., Rule 1720-3-5-.01(1)(d). And based on the allegations of the Complaint, UTHSC has not interpreted its Professionalism Rule to allow it to unlawfully punish speech. The First and Second Causes of Action should be dismissed.

## **<u>CONCLUSION</u>**

The Official Capacity Defendants request the Court to dismiss the First, Second and Third Causes of Action with prejudice.

Respectfully submitted this 1st day of March, 2021.

> */s/ Frank H. Lancaster*
> Frank H. Lancaster, BPR # 030650
> Associate General Counsel
> University of Tennessee
> 719 Andy Holt Tower
> Knoxville, TN 37996-0170
> (865) 974-3245
> flancast@tennessee.edu
>
> Attorney for Defendants

15

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2021, a copy of the foregoing memorandum was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's electronic filing system.


*/s/ Frank H. Lancaster*