THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KIMBERLY DIEI,<br><br>*Plaintiff*,<br><br>v.<br><br>RANDY BOYD, *et al.*,<br><br>*Defendants*. | **CIVIL ACTION NO.**<br>**2:21-cv-02071-JTF-cgc**<br><br>**JURY DEMAND** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRODUCTION OF
CERTAIN FERPA-PROTECTED DOCUMENTS**

GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No. 171622015
KATLYN A. PATTON*
PA Bar No. 328353; OH Bar No. 097911
FOUNDATION FOR INDIVIDUAL RIGHTS AND
    EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
greg.greubel@thefire.org
katlyn.patton@thefire.org

EDD PEYTON
TN Bar No. 25635
SPICER RUDSTROM, PLLC
119 South Main, Suite 700
Memphis, Tennessee 38103
Tel: (901) 522-2318
Fax: (901) 526-0213
epeyton@spicerfirm.com

*Admitted *Pro Hac Vice*

*Counsel for Plaintiff Kimberly Diei*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.    The Documents at Issue Are Clearly Relevant to Plaintiff's Claims ...................... 6

    II.   Plaintiff's Need for These Documents Outweighs the Objecting Students' Privacy Interests, Which Are Safeguarded by the Parties' Protective Order. ................................................................................................. 8

CONCLUSION ..................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Doe 1 v. Baylor Univ.*,
    No. 6:17-CV-173-RP, 2022 WL 180154 (W.D. Tex. Jan. 20, 2022) ................................. 9

*Doe v. Univ. of Tenn. at Chattanooga*,
    No. 1:21-cv-00005-DCLC-SKL, 2021 WL 6327693 (E.D. Tenn. July 27, 2021) .............. 5

*Doe v. Yale Univ.*,
    564 F. Supp. 3d 11 (D. Conn. 2021) ........................................................................ 5, 6, 10

*Kendall v. Arbor Place of Puryear, Inc.*,
    No. 07-1058 MA/AN, 2007 WL 9706502 (W.D. Tenn. Dec. 5, 2007) ............................. 8

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...................................................................................................... 6, 8

*Rios v. Read*,
    73 F.R.D. 589 (E.D.N.Y. 1977) ......................................................................................... 5

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) ............................................................................................. 7

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ........................................................................................................... 7

**Statutes:**

20 U.S.C. § 1232 .................................................................................................................... 5

34 C.F.R. § 99.31 ............................................................................................................... 4, 5

34 C.F.R. § 99.1 ..................................................................................................................... 1

Fed. R. Civ. P. 26(b)(1) ......................................................................................................... 6

Under this Court's May 26, 2022 Orders, Order Referring Objections to the Magistrate Judge (ECF No. 54) and Minute Entry (ECF No. 53), Plaintiff Kimberly Diei respectfully submits this memorandum in support of the production of documents protected by the Family Educational Rights and Privacy Act (FERPA), 34 C.F.R. § 99.1 *et seq*.

## INTRODUCTION

In this First Amendment lawsuit, Plaintiff Kimberly Diei alleges the University of Tennessee Health Science Center (UTHSC) College of Pharmacy violated her constitutional rights when it punished her for viewpoints she expressed on her personal social media accounts. Diei brings both as-applied claims challenging the College of Pharmacy's investigation into her protected expression and facial claims challenging, as unconstitutionally overbroad and vague, Defendants' "various professionalism policies" under which she was punished. To prove her claims, Diei submitted requests under Federal Rule of Civil Procedure 34 for: (1) complaints filed by other students about her social media posts; and (2) documents concerning Defendants' enforcement of the challenged policies. Many of the responsive documents are education records of current and former students that are protected by FERPA. Under FERPA, eleven students objected to the production of their records in this case.

These documents are clearly relevant to Diei's claims under the broad pretrial discovery standard for federal litigation—in fact, Diei needs these documents to prove her claims because they either: (1) contain the anonymous complaints that *triggered* the investigation into her protected expression on social media; or (2) constitute evidence of the substantial number of unconstitutional applications of Defendants' policies that Diei needs to prove her facial overbreadth claim. Moreover, Diei's need for these documents outweighs the objecting students' interests, which are adequately safeguarded by the Protective Order entered by the Court in this

1

case. Plaintiff therefore respectfully requests this Court to order Defendants to produce the objecting students' records under the parties' existing Protective Order.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff is challenging her graduate school's disciplinary investigation into her expression on her personal social media accounts. Based on an anonymous complaint, the UTHSC College of Pharmacy Professional Conduct Committee (the Committee) investigated Diei's personal social media posts in 2020. ECF No. 1, Compl. ¶ 55. After reviewing the anonymous complaint, the Committee voted to expel her because the "crude," "vulgar," and "sexual" viewpoints expressed in her personal social media purportedly violated "various professionalism policies" of the school. *Id.* ¶¶ 43–44.

On February 3, 2021, Diei sued UT President Randy Boyd, Committee Chairperson Christa George, and members of the Board of Trustees of the University of Tennessee for violating her rights under the First and Fourteenth Amendments, seeking declaratory and injunctive relief and damages. *Id.* ¶¶ 101–65. Diei brings facial challenges to Defendants' "various professionalism policies" on overbreadth and vagueness grounds. *Id.* ¶¶ 101–25. Diei also brings as-applied challenges to Defendants' "various professionalism policies" alleging claims for a violation of the First Amendment and First Amendment retaliation. *Id.* ¶¶ 126–65.

On March 1, 2021, Defendants filed two motions to dismiss. ECF No. 24, Official Capacity Defs.' Mot. to Dismiss First, Second, and Third Causes of Action; ECF No. 25, Individual Capacity Defs.' Mot. to Dismiss Fourth and Fifth Causes of Action. As of April 21, 2021, the parties completed the briefing on the motions to dismiss, and as of the day of this filing those motions remain fully briefed and pending. ECF No. 32, Pl.'s Resp. in Opp'n to Mots. to Dismiss; ECF No. 35, Defs.' Reply in Supp. of Mots. to Dismiss. During this time, Diei's speech

continues to be chilled by the "various professionalism policies" she challenges on overbreadth and vagueness grounds. Moreover, the parties have jointly offered to engage in oral argument on the motions to dismiss because it would materially assist the Court with distilling the 102 pages of briefing. The parties' briefing is voluminous because Defendants moved to dismiss each of Diei's five claims against all parties in their individual and official capacities, and raised complicated legal issues including qualified immunity.

On September 24, 2021, Plaintiff propounded written discovery requests upon Defendants Boyd, George, and the Board of Trustees seeking documents related to both the Committee's investigation into her social media and the enforcement of Defendants' professionalism policies by the Committee since August 1, 2016. Specifically, Plaintiff sought all documents related to charges submitted to the Committee dating back to August 1, 2016, including those concerning Plaintiff.

Although Defendants produced documents responsive to Plaintiff's requests on November 1, 2021, they withheld some responsive documents under FERPA. After conferring, the parties submitted a Joint Motion for Protective Order to protect certain confidential documents, testimony, information, or material, including the FERPA-protected documents withheld by Defendants. ECF No. 47. The Court entered the Protective Order on December 15, 2021. ECF No. 48, Order Granting Parties' Joint Protective Order. Under the Protective Order, documents designated as confidential, including education records subject to FERPA, "shall be held in strict confidence and shall be used solely for the purposes of prosecution or defense of this litigation." *Id.* § II.7. Access to documents designated confidential under the Protective Order is strictly limited to counsel for the parties, employees or officers of the parties who have a reasonable business need to review the documents, and witnesses. *Id.* § II.7. Witnesses must also

be provided with a copy of the Protective Order and informed that the confidential documents must be held in strict confidence. *Id.* § II.7.a–c. The Protective Order further requires that all FERPA-protected education records must be destroyed after the conclusion of this litigation. *Id.* § III.14.

Defendants subsequently sent FERPA-required notices to 45 students whose records were responsive to Plaintiff's discovery requests. *See* 34 C.F.R. § 99.31(a). Eleven students objected within the 14-day period allowed by FERPA. Defendants then produced the responsive documents of the other 34 students on March 8, 2022. Among these documents were at least nine instances of the Committee investigating or disciplining student expression, some on social media.

On May 26, 2022, the parties attended a status conference with the Honorable Judge John T. Fowlkes, Jr., who ordered the parties to submit briefing on whether Defendants must produce records of students who objected under FERPA. Order Referring Objs. to Magistrate Judge. By a separate order, Judge Fowlkes stayed this matter pending the resolution of the motions to dismiss. ECF No. 55, Order Granting Joint Mot. to Stay Disc.

Given Diei's ongoing First Amendment injury, the limited term of her degree program, and that the motions to dismiss have already been pending for 429 days, it is imperative that Diei be permitted to access the documents at issue, complete written discovery, and depose the relevant witnesses to effectively and efficiently pursue her claims. As argued below, this Court should order Defendants to produce the objecting students' records pursuant to the existing Protective Order and allow Diei to continue this lawsuit.

4

## ARGUMENT

Broadly speaking, FERPA requires schools to limit the disclosure of student records without their consent. Institutions that adopt a policy or practice of improperly disclosing records can be subject to sanctions under the statute. "However, such sanctions do not apply where the student . . . provide[s] written consent, or when the education records are 'furnished in compliance with a judicial order,'" provided the students receive notice that their records are to be disclosed. *Doe v. Univ. of Tenn. at Chattanooga*, No. 1:21-cv-00005-DCLC-SKL, 2021 WL 6327693, at *1 (E.D. Tenn. July 27, 2021) (citing 20 U.S.C. § 1232g(b)(2)(B)). FERPA requires institutions to provide students with this notice of disclosure. 34 C.F.R. § 99.31(a)(9)(i)–(ii).

A nonparty's objection under FERPA is not an absolute bar on producing records in discovery. *See Doe v. Yale Univ.*, 564 F. Supp. 3d 11, 20 (D. Conn. 2021) ("FERPA addressed certain perceived societal and policy needs, but the statute was not intended to abrogate the rules of discovery in civil litigation, nor does it have a preclusive effect."); *see also Rios v. Read*, 73 F.R.D. 589, 598–99 (E.D.N.Y. 1977) ("It is obvious . . . that [FERPA] does not provide a privilege against disclosure of student records."). Rather, the question for the Court is whether "the need for the information . . . outweighs the privacy interests of the students," and whether the education records are "clearly relevant to the claims at issue." *Doe v. Univ. of Tenn.*, 2021 WL 6327693, at *2.

The objecting students' records are clearly relevant to Diei's claims under the federal rules for pretrial discovery—in fact, she *needs* them to prove both her as-applied and facial claims. The records triggered the investigation into Diei's expression on social media and go directly to the question of viewpoint discrimination alleged in her as-applied claims. Diei also needs the records to prove her overbreadth claim because they represent potential

5

unconstitutional applications of Defendants' "various professionalism policies." Diei cannot obtain the documents elsewhere because they are held in confidence by Defendants under FERPA, and because the objecting students do not possess the same universe of documents and information as Defendants, who conducted these disciplinary proceedings. Moreover, the objecting students' privacy rights are adequately served by the Protective Order such that Diei's need for the documents outweighs those privacy interests.

## I. The Documents at Issue Are Clearly Relevant to Plaintiff's Claims.

Plaintiff asserts claims challenging both the Committee's investigation into her and the facial validity of Defendants' professionalism policies enforced by the Committee. Complaints concerning Plaintiff, which prompted the 2020 investigation, are therefore clearly relevant to her claims. The scope of discovery under the Federal Rules of Civil Procedure includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).[1] As the court recognized in *Doe v. Yale University*, "[f]ederal civil litigation is characterized by broad pretrial discovery." 564 F. Supp. 3d at 18. What is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Three of Diei's claims allege Defendants' investigation into her social media posts and subsequent

---

[1] The proportionality requirement under Rule 26(b)(1) takes into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* This action concerns Plaintiff and all UTHSC graduate students' constitutional rights, a matter of great importance. Further, as discussed below, these documents are only in Defendants' possession, Plaintiff cannot access them from another source, and they are necessary to prove her claims. Defendants have also already compiled the responsive documents, so the burden of production is low.

decision to expel her were viewpoint discriminatory and violated the First Amendment. Compl. ¶ 132–33, 147–48, 157. Documents that *prompted* the Committee's disciplinary investigation into Diei's expression on her personal social media are central to her allegations of viewpoint discrimination. Those documents are therefore clearly relevant to Diei's claims.

The Committee's history of enforcement of Defendants "various professionalism policies" against other students is also directly relevant. Among the documents Defendants produced on March 8, 2022, were at least nine instances of the Committee investigating or disciplining expression, some on social media. It is therefore reasonable to believe the remaining documents: (1) also involve investigations into expression; or (2) directly involve the investigation into Plaintiff's social media because they are records of students who submitted complaints about her social media accounts, as discussed above. To prevail on her overbreadth challenge, Diei must prove that "a substantial number of instances exist in which [Defendants' policies] cannot be applied constitutionally." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013). Every instance counts towards this "substantial number." Diei properly seeks these documents in discovery to support her claims.

The historical application of a policy is relevant to whether that policy is facially unconstitutional. In considering whether a policy is facially invalid, courts look to the historical enforcement and interpretation of that policy. *See Ward v. Rock Against Racism*, 491 U.S. 781, 795 (1989) ("Administrative interpretation and implementation of a regulation are, of course, highly relevant" to an analysis of the facial validity of a regulation). Diei sought records related to the enforcement of Defendants' "various professionalism policies" by the Committee to gather evidence to support this claim. And the records Defendants have produced thus far do so. While Diei has not yet had the opportunity to review the withheld documents, they too meet the liberal

7

pretrial discovery standard for what documents are or may be relevant to her claims. *See Kendall v. Arbor Place of Puryear, Inc.*, No. 07-1058 MA/AN, 2007 WL 9706502, at *1 (W.D. Tenn. Dec. 5, 2007) (citing *Oppenheimer Fund*, 437 U.S. at 351) ("The United States Supreme Court has noted that discovery should be both broad and liberal.").

### II. Plaintiff's Need for These Documents Outweighs the Objecting Students' Privacy Interests, Which Are Safeguarded by the Parties' Protective Order.

As an initial matter, the documents at issue are exclusively within Defendants' control. Diei cannot recover this these documents from another source.[2] If Defendants do not produce the objecting students' records, Diei will be without important documentation of the student complaints that prompted the 2020 investigation into her expression on her personal social media accounts, and will be prejudiced in proving her facial claims. Diei could subpoena the third-party objecting students and ask them to compile and produce old records concerning their disciplinary investigations, and call them to sit for depositions. That process, however, would be significantly *more* burdensome on the objecting students and more intrusive into their lives. Further, even if Diei subpoenaed the objecting students, they are not in possession of the same universe of documents and information as Defendants. For example, students are not provided with the Committee's meeting minutes. Those minutes reflect the Committee's internal discussions about disciplinary charges against students, how they decided whether to punish those students, and what the students' punishments would be. As another example, students—like Diei—are not always provided with complaints underlying their investigations by the Committee. If Defendants do not produce the objecting students' records, Diei will be without this information, which, as argued above, she needs to prove her claims.

---

[2] Indeed, the unavailability of these documents from sources other than educational institutions is the intended result of FERPA itself—educational institutions must not, as a matter of policy or practice, release such records to anyone else.

8

Second, there is already an effective Protective Order in this case that protects the objecting students' privacy interests. Order Granting Parties' Joint Protective Order. As summarized above, the Protective Order requires FERPA-protected education records to be held in strict confidence and sharply limits the number of people who have access to the records. *Id.* § II.7. Because Diei needs the records to prove her claims, and the risk of public disclosure of the objecting students' records is mitigated by the Protective Order, Diei's need for the responsive documents outweighs the objecting students' privacy interests.

Courts have recognized that protective orders can satisfy the privacy interests FERPA protects. Where a student objected to disclosure of their FERPA-protected records in a recent case against Baylor University, the court held that the objecting student's privacy interest in keeping their records and identity from being public was served by an existing protective order. *Doe 1 v. Baylor Univ.*, No. 6:17-CV-173-RP, 2022 WL 180154, at *2 (W.D. Tex. Jan. 20, 2022). "[T]he Protective Order in this case is designed to handle precisely this situation where very sensitive information is relevant to a lawsuit and a small number of people must be able to view that information to conduct the case." *Id.* The protective order in *Baylor* ensured the objecting student's "records and their identity are known only to a small number of attorneys . . . [T]his adequately balances the [objecting student's] privacy interests with the parties' need to discover material that is relevant to their claims and defenses." *Id.* Similarly, here the Protective Order sharply limits the number of individuals who have access to FERPA-protected records to a handful of individuals who need access to the documents to prosecute or defend this litigation. Order Granting Parties' Protective Order, § II.7.

In another recent case, a Yale University student challenging his expulsion served a subpoena on the institution for the records of two other students with whom he had worked on a

9

group assignment. *Doe v. Yale Univ.*, 564 F. Supp. 3d 11, 18–19. Essays the group wrote were the subject of an honor code violation that ultimately resulted in Doe's expulsion. *Id.* at 15. Yale moved to quash the subpoena on the grounds that the student requested documents protected by FERPA, and that the documents were irrelevant. *Id.* at 19–20. The court denied Yale's motion for two reasons. First, plaintiff's need for the requested documents was "manifest": He sought to prove Yale treated him in a disparate manner compared to the other students, and his claim required facts related to his expulsion. *Id.* at 21. Second, the parties had already entered a protective order answering the privacy concerns contemplated by FERPA and raised by Yale. *Id.* at 22. The court held "the privacy and confidentiality concerns expressed by Yale . . . were squarely addressed in a rather elaborate Stipulation and Protective Order." *Id.* Further, "[t]he protective order safeguards the privacy of involved individuals, thereby enhancing the relative importance of the Plaintiff's access to this information." *Id.*

Like the plaintiff in *Yale*, Diei's need for the objecting students' education records is "manifest." Diei seeks records of objecting students whose complaints triggered Defendants' investigation of her social media, just as the Yale student plaintiff sought records of students directly involved in his honor code investigation and suspension. The anonymous complaints about Diei's social media posts, and the Committee's reliance on them in its investigation and punishment of Diei, are necessary to the resolution of her Third, Fourth, and Fifth Causes of Action. And as in *Yale*, there is already an operative Protective Order in this case, which "enhance[es] the relative importance of" Diei's need for the documents as compared to the objecting students' privacy interests such that her need outweighs those interests.

10

## **CONCLUSION**

For the foregoing reasons, this Court should order production of the objecting students' records under the parties' existing Protective Order.

Dated: June 24, 2022

| | |
|---|---|
| */s/ Greg H. Greubel* | */s/ Edd Peyton* |
| GREG HAROLD GREUBEL* | EDD PEYTON |
| PA Bar No. 321130; NJ Bar No. 171622015 | TN Bar No. 25635 |
| KATLYN A. PATTON* | SPICER RUDSTROM, PLLC |
| PA Bar No. 328353; OH Bar No. 097911 | 119 South Main, Suite 700 |
| FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION | Memphis, Tennessee 38103 |
| 510 Walnut Street, Suite 1250 | Tel: (901) 522-2318 |
| Philadelphia, PA 19106 | Fax: (901) 526-0213 |
| Tel: (215) 717-3473 | epeyton@spicerfirm.com |
| Fax: (215) 717-3440 | |
| greg.greubel@thefire.org | |
| katlyn.patton@thefire.org | |

*Admitted *Pro Hac Vice*

11

## CERTIFICATE OF SERVICE

Plaintiff's counsel confirms that a true and correct copy of the foregoing was served via the Court's electronic filing system on this day, June 24, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated below and parties may access this filing through the Court's electronic filing system.

Frank H. Lancaster
UNIVERSITY OF TENNESSEE
Office of General Counsel
719 Andy Holt Tower
Knoxville, TN 37996-0170
Tel: (865) 974-2544
flancast@tennessee.edu

*Counsel for Defendants Randy Boyd, Christa George, Brad Box, John Compton, Kara Lawson, Alan Wilson, Amy Miles, Charles Hatcher, Decosta Jenkins, Donnie Smith, Jamie Woodson, Kim White, and William Rhodes*

Greg H. Greubel
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
greg.greubel@thefire.org

Edd L. Peyton
SPICER RUDSTROM PLLC
119 South Main Street
Suite 700
Memphis, TN 38103
Tel: (901) 522-2313
epeyton@spicerfirm.com

Katlyn A. Patton
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 717-3473
katlyn.patton@thefire.org

*Counsel for Plaintiff Kimberly Diei*

Dated: June 24, 2022

*/s/ Greg H. Greubel*
Greg H. Greubel