**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY DIEI,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cv-2071-JTF-cgc** |
| | ) | |
| **RANDY BOYD,** *et al.,* | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
AND ORDER FINDING DISCOVERY MOTIONS MOOT**

Before the Court is Defendants' University of Tennessee President Randy Boyd and University of Tennessee Health Science Center ("UTHSC") College of Pharmacy Associate Professor Dr. Christa George's (the "Individual Capacity Defendants") Motion to Dismiss Plaintiff's Fourth and Fifth causes of action pursuant to Fed. R. Civ. P. 12(b)(6) filed on March 1, 2021.  (ECF No. 24 and ECF No. 24-1.)  Also, pending is the University of Tennessee Board Members and UTHSC employees' (the "Official Capacity Defendants") Motion to Dismiss the remaining causes of action also filed on March 1, 2021.  (ECF No. 25.) Plaintiff filed a Consolidated Response to the motions to dismiss on April 9, 2021, to which the Defendants filed a Consolidated Reply on April 21, 2021.[1]

---

[1] On June 24, 2022, the Defendants filed a Discovery Motion requesting that the Court prohibit the release of certain University records of ten non-party students and former students at the College of Pharmacy (the "Objecting Students") who did not want their documents and private information provided to the Plaintiff. (ECF No. 58.) On June 27, 2022, Plaintiff filed a Corrected Motion for Discovery requesting these FERPA documents. (ECF No. 60.) On July 6, 2022, the undersigned Court referred these motions to the assigned United States Magistrate Judge. (ECF No. 61.)  Based on

(ECF No. 32 and ECF No. 35.) [2]   For the following reasons, the Court finds the Defendants' Motions

to Dismiss Plaintiff's Complaint should be Granted and the case dismissed with prejudice.

## I.  FACTUAL BACKGROUND

Plaintiff, Kimberly Diei was a doctorate student at the University of Tennessee Health Science

Center ("UTHSC") who graduated from the College of Pharmacy in May 2023.  Diei asserts that

she was always in good academic standing, maintained excellent grades and earned competitive

internships.  (ECF No. 1, 6 ¶¶ 14–19.)  Defendant Randy Boyd is the President and CEO of the

UTHSC system.  Defendant Christa George is an Associate Professor of Clinical Pharmacy and

Translational Science and the Chairperson of the College of Pharmacy's Professional Conduct

Committee ("The Committee"). The Committee is made up of nine faculty members and three

student members and investigates complaints of unprofessional conduct. Defendants Brad Box, John

Compton, Charles Hatcher, Decosta Jenkins, Kara Lawson, Amy Miles, William Rhodes III, Donnie

Smith, Kim White, Alan Wilson, and Jamie Woodson are members of the University of Tennessee

Board of Trustees ("Board").  Plaintiff asserts that the Board is the governing body responsible for

the formulation and approval of policies for the operation of the University of Tennessee system,

which includes the College of Pharmacy.

Diei asserts that because of anonymous complaints, the Committee twice investigated her for

alleged violations of the College of Pharmacy's professionalism policy.  In 2019, the Committee

investigated Diei because of several social media posts on "Twitter and Instagram" under the

---

the pending rulings on Defendants' motions to dismiss, further discovery in this case has been properly stayed. (ECF No. 46 and ECF No. 55.)

[2] The Court notes that both parties cite to their respective pleadings based on the page numbers indicated on the bottom of their filings after the Table of Contents preceding the memoranda of law.  These references do not align with the pages numbers that are reflected in the ECF record. For purposes of consistency and clarification, the Court will refer to the page numbers of the original documents as cited instead of the ECF page numbers indicated in the ECF header. The Blue Book: A Uniform System of Citation: Rule B17.1.4 at 24 (21st ed. 2020)

pseudonym of "KimmyKasi." The Committee unanimously found Diei's posts to be of a "sexual," "crude," and "vulgar nature;" and contrary to the college's professionalism policy. (ECF No. 1, ¶¶ 36, 42, and 43.)  As a result, the Committee recommended that the Dean of the College of Pharmacy, Marie Chisholm-Burns, require Diei to submit a letter regarding the posts and the College of Pharmacy's expectations.  On October 14, 2019, Dean Chisholm-Burns agreed with their decision. Thereafter, Diei agreed to submit a written statement.  (ECF No. 1, ¶¶ 47, 50.)

On August 29, 2020, Chairperson George informed Diei that she must appear before the Committee again for another meeting concerning her "unprofessional social media posts."  (ECF No. 1, ¶ 55.)  She did so, and on September 2, 2020, Diei was advised that the committee had determined that her conduct breached the norms and expectations for students in the UTHSC College of Pharmacy. The Committee voted unanimously to academically dismiss Diei from the College of Pharmacy, "effective immediately," although Diei admits she was not actually expelled. (*Id.* at ¶¶ 70, 78-82, 100.) Diei successfully appealed; the Committee's action was reversed on September 25, 2020. (*Id.* at ¶¶ 89, 92.)

To date, Diei asserts that she never received the College of Pharmacy's actual codes or policies regarding social media expression.[3]  In addition, no Committee member ever provided Diei with the text of specific policies or explained how her "sexual," "crude," or "vulgar" social media posts violated the policies.  (*Id.* at ¶¶ 36, 38–40, 43, 45, 51, 54, 66, 67, 76, 77, 85 and 93.)  She also contends that her posts never indicated her affiliation with the UTSHC nor that she is a student in the UTHSC College of Pharmacy. (*Id.* at ¶ 25.)  Diei asserts that she has over 19,600 followers on

---

[3] Diei specifically refers to the College of Pharmacy's "Standards for Student Professionalism Conduct" is available at the following URL: http://catalog.uthsc.edu/content.php?catoid=29&navoid=2706. (ECF No. 1, ¶¶ 38-40.)

3

Instagram and over 1,600 followers on Twitter and has never used her personal social media accounts in a manner that would negatively impact her academic responsibilities or professional opportunities. As a result of the Defendants' actions, Diei contends she has suffered emotional distress, humiliation, embarrassment, and injury to her reputation. (ECF No. 1, 18 at ¶ 100.)

Diei filed the instant lawsuit against all of the Defendants for injunctive and declaratory relief, asserting that the party Defendants violated the First and Fourteenth Amendments of the United States Constitution and the Civil Rights Act, *to wit*, 42 U.S.C. §§ 1983 and 1988.  (ECF No. 1, at 1–6, 18–29.) She requests the Court to enter a declaratory judgment and grant injunctive relief to restrain enforcement of the College of Pharmacy's professionalism polices as applied to Diei or anyone else.  (*Id.* at 30, ¶¶ E-F.)

## II.   **LEGAL STANDARD**

A party may move to dismiss a case for failure to state a claim pursuant to Fed. Rule of Civil Procedure12(b)(6).  In order to survive a Rule 12(b)(6) motion, the complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs, Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).  A plaintiff must provide a short and plain statement of the claim showing an entitlement to relief and the grounds upon which it rests.  Even though detailed factual allegations are not required, a party must still provide more than bare labels and conclusions. This standard requires the trial court to scrutinize and weigh the facts to determine if they present a plausible claim. If the court determines, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. *Twombly*, 550 U.S. 544, 555 (2007); and *Ashcroft v. Iqbal*, 556 U.S. 662, 679.

When determining whether to grant a Rule 12(b)(6) motion to dismiss, the Court will construe

4

the complaint in the light most favorable to the plaintiff, accept all well-pleaded allegations as true and determine whether there are any facts in support of the claim that would entitle her to relief. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).

### III.  <u>ANALYSIS</u>

Kimberly Diei claims that the sixteen (16) Defendants, in their individual and/or official capacities, violated her due process rights under the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983 by implementing and imposing on her unconstitutional policies that allow subjective censorship of students' behavior outside of the College of Pharmacy, specifically in the use of social media.  (ECF No. 1, 1–29.)

As noted, the "Individual Capacity Defendants," President Randy Boyd and Associate Professor Dr. Christa George, filed a Motion to Dismiss Plaintiff's Fourth and Fifth Causes of Action pursuant to Rule 12(b)(6). (ECF No. 24.) Plaintiff's Fourth Cause of Action asserts First and Fourteenth Amendment and 42 U.S.C. § 1983 claims for free speech violations, arguing that the UTHSC's Professionalism Rule is unconstitutional.  (ECF No. 1, 25–28.)  Plaintiff's Fifth cause of action raises retaliation claims under the First Amendment and 42 U.S.C. § 1983 against Chairperson George only.  (*Id*. at 28–29.)

The Individual Capacity Defendants assert that all of the claims against them should be dismissed pursuant to Rule 12(b)(6) because: (1) the claim resulting from the 2019 appearance before the Committee is time-barred by the one-year statute of limitations; (2) Diei's social media posts are not speech protected by the First Amendment;  (3) the Defendants took no adverse action against Diei; (4) similarly, Diei did not suffer any adverse action after the 2020 hearing because she was not expelled; (5) the Committee did not violate her First Amendment rights by investigating the

instant complaints; (6) The Fourth Cause of Action against President Boyd fails to allege that President Boyd had a role in the events; and last, (7) both President Boyd and Dr. George are entitled to qualified immunity.  (ECF No. 24 and ECF No. 24-1.)

Plaintiff  responds that (1) the Individual Capacity Defendants' motions to dismiss invite the Court to inappropriately consider materials outside the Complaint, including the six screenshots from her 2019 Instagram stories and the attached professionalism regulations and policies, and therefore, should be treated as a Rule 56 motion for summary judgment; (2) the Third and Fourth causes of action sufficiently state a claim against Chairperson George in both her individual and official capacities, for retaliation against Diei based on her off-campus online speech; (3) the Defendants' invocation of qualified immunity fails because: (a) by exercising viewpoint discrimination, the officials violated her clearly established constitutional right to free speech and, (b) a Rule 12(b)(6) motion may not be granted based on qualified immunity; and finally, (4) she has raised sufficient facial challenges to the university's professionalism policies as constitutionally overboard and vague.[4]  (ECF No. 32, 6–46.)

## I.    The Individual Capacity Defendants' Motion to Dismiss – ECF No. 24

For the reasons provided below, the Court finds the Motion to Dismiss the Fourth and Fifth Causes of Action against the Individual Capacity Defendants should be Granted.

First, the Court will address whether the claims surrounding the 2019 investigation have been withdrawn.  Within Plaintiff's response to the Motion to Dismiss, Plaintiff refers to the 2019 investigation by stating in part that Defendants never provided her with any of the policies for which

---

[4] Again, Diei maintains that she was given only one policy governing professionalism – the Standards of the Health Professions in the Student Handbook, although the Committee sought to expel her from the College of Pharmacy based on violations of "Technical Standards."  (ECF No. 32, 4-9.)

she was disciplined in 2019 and 2020.  (ECF No. 32, 9).  It is clear that Diei does not rely on the

2019 investigation to support her claims:

> Defendants' first investigation into Diei's social media activity was in
> September 2019.  (*Id.,* at ¶ 34.)  *While Diei has not based her claims on that
> investigation,* it is evidence of Defendants' hostility towards her protected
> speech. During its 2019 investigation, the Committee indicated that Diei's
> posts violated the College of Pharmacy's professionalism policies because
> they were "crude," "vulgar," and "sexual."  (*Id.*, at ¶ 43.) Chairperson George
> did not provide Diei with the "various" professionalism policies" under which
> she was allegedly investigated in 2019.  (*Id.,* at ¶ 36.)

(ECF No. 32, 3.)  (emphasis added)

The Court concludes that Diei's allegations regarding the 2019 investigation, which resulted

in punishment, are not being advanced as a claim by Diei.  Even if Diei were attempting to prosecute

a claim based upon what happened between her and Defendants in 2019, any such claim would be

time-barred.

Another preliminary matter before the Court is whether the attachments to the Defendants'

motion, the six screenshots and a video posted on Diei's Instagram account, may be considered by

the Court in ruling on the motion to dismiss. (ECF No. 32, 9-10.)  Diei asserts that under *Tygret v.*

*Cooper*, these matters are outside the scope of the Complaint and therefore, inappropriate for

consideration of a Rule 12(b) motion to dismiss.  *Tygret v. Cooper*, 855 F.Supp.2d 733, 757 (W.D.

Tenn. 2012.)  Defendants respond that they properly included attachments to the motion to dismiss

and properly applied the Rule 12(b)(6) standard. They state that the "attachments [are] copies of

state laws, copies of judicially noticeable documents, copies of documents referred to in the

Complaint, and an authentication declaration."   (ECF No. 35, 16.)

Typically, in reviewing a motion to dismiss for failure to state claim, the district court may not

consider  matters  beyond  the  complaint.    Fed.  Rule  Civ.  Proc.  12(b)(6).  "Under  certain

circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings" for the purpose of a 12(b)(6) motion to dismiss. *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999). When a document is mentioned in the complaint and is a necessary part of the plaintiff's claim, the defendant may submit a copy of the document to the court as an attachment to a motion to dismiss.  "The motion to dismiss does not need to be converted to a motion for summary judgment when a document central to the complaint is attached to the motion to dismiss." *Id.*

Diei's claims involve disciplinary action by the UTHSC that she allegedly received because of her social media posts in violation of her free speech and due process rights.[5]  (ECF No. 1.)  The Complaint repeatedly refers to the University's professionalism policies that she says were never given or communicated to her.  Also copies of certain Instagram and twitter posts that caused the Committee's investigations, many of which were included in the Complaint, were attached.  (*Id*. at 12, ¶ 61 and 13, ¶ 65.)  Diei acknowledges that a court may consider items in the record of the case without converting a motion to dismiss to a Rule 56 motion so long as the items are referred to in the complaint and central to the claims therein.  (ECF No. 32, 9-10.)   *Trs. of Detroit Carpenters Fringe Benefit Funds v. Patrie Constr. Co*., 618 Fed. Appx. 246, 255 (6th Cir. 2015).   The screenshots[6] and video clip of Diei's social media posts are referenced in the Complaint and remain central to her claims for relief.   *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d at 514.   Therefore, the Court may consider these attachments. (ECF No. 24-2 – ECF No. 24-9.)

---

[5]  Plaintiff refers the Court to her social media posts throughout the Complaint. (See ECF No. 1, ¶¶ 1–3, 19–20, 25, 28, 30–35, 41, 43, 49, 52, 55, 61, 65, 70, 80–81,84–85, 94, 97-98, 105, 133, 136, 148 and 151.)
[6] The Court notes that three (3) of the same screenshots Defendants included in their Motions to Dismiss had already been included in Plaintiff's Complaint.

Diei's Fourth Cause of Action alleges that Defendants UTHSC President Randy Boyd and Committee Chairperson Christa George, in their individual capacities, violated her First and Fourteenth Amendment rights to free speech and 42 U.S.C. § 1983.  (ECF No. 1, 25–28, ¶¶ 141–155.)  Her Fifth Cause of Action alleges that Chairperson George retaliated against her in violation of 42 U.S.C. § 1983, in 2019 and 2020.  (*Id.* at 28–29, ¶¶ 156–165.)

1.    Claims Regarding the 2019 Committee Hearing

Defendants contend that any claims involving the October 2019 investigation and committee hearing are time-barred by the one-year statute of limitations under Tenn. Code Ann. § 28-3-104(a)(1)(B).  (ECF No. 24, 2 and ECF No.  24-1, 10.)  The Defendants also assert that Diei has withdrawn her claims regarding the 2019 investigation by stating in her response that "Diei has not based her claims on that [September 2019] investigation."  (ECF No.  35, 6–7, *see* ECF No. 32, 3.)  As addressed above, the Court has concluded that Diei has not advanced any claims surrounding 2019 Committee investigation.

2.    Plaintiff's Social Media Posts - Protected Speech Under the First Amendment

Diei asserts that the Committee's determinations that her posts were "crude," "vulgar," and "sexual" demonstrate the Committee's hostility towards her protected speech in violation of her First Amendment rights. (ECF No. 32, 11-12.)  Diei states that school administrators may not "invoke curriculum as a pretext for punishing" a student because of her viewpoint, even if those viewpoints are offensive. *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012).  Defendants George and Boyd respond that: (1) public institutions of higher education may require students to adhere to professional standards of the profession in which they are preparing to enter; (2) those professional standards may regulate conduct that involves speech; and (3) the speech that may be regulated

9

includes off campus, on-line speech such as social media posts. *Hunt v. Board of Regents of the University of New Mexico*, 792 Fed. Appx. 595 (10th Cir. 2019), *cert. denied*, 2020 WL 6829148 (2020); *Keefe v. Adams*, 840 F.3d 523 (8th Cir. 2016); *Oyama v. University of Hawaii*, 813 F.3d 850, 869 (9th Cir. 2015); *Yoder v. University of Louisville*, 526 Fed. Appx. 537 (6th Cir. 2013). Defendants refer the Court to the standards in Tenn. Code Ann. § 63-10-202; Tenn. Code Ann. §§63-10-301, *et seq*.; Tenn. Comp. R. & Regs., Rule 1140-02-01, found in Tenn. Code Ann. §§ 4-5-202 - and 4-5-205. Defendants assert that Diei was aware of these standards when she signed documents indicating she had read and agreed to be bound by school policies that set standards for student conduct. (ECF No. 24-1, 5–10.) "On August 7, 2019, she signed a document entitled "Standards for Student Professional Conduct." (Exhibit 4). They identify the relevant sources, including CenterScope, the UTHSC's student handbook. By signing this document, Diei affirmed her knowledge of, and commitment to abide by UTHSC policies:

> I have read carefully the College of Pharmacy's Standards for Student Professional Conduct and the Student Policies and Guidelines of The University of Tennessee Health Science Center. I fully understand their meaning and significance. While a student at this institution, I agree to abide by the Standards for Student Professional Conduct and Student Policies and Guidelines and agree to accept all of its implications without reservation.

(ECF No. 24-1, 2-4 and ECF No. 24-1, Exhibits 1-4.)

Diei's Fourteenth Amendment claims in the Fourth Cause of Action against Boyd and George in their individual capacities submit that Defendants applied vague and overly broad professionalism policies to punish her online speech. This was done without providing her the actual text of those policies. Diei contends that although Chairperson George provided a link to screenshots of her social media activity on Twitter and Instagram, she did not identify the professional policies she had

violated or what aspects of these posts were objectionable to the Chairperson or to the Committee, in violation of her due process rights.  (ECF No. 1 at ¶¶ 51, 56, and 65.)  More specifically, the Complaint provides that "On Thursday, August 27, 2020, Chairperson George notified Diei by email that she received another complaint concerning Diei's "unprofessional social media posts." (ECF No. 1, 11 at ¶ 55.) Diei alleges that "Defendants did not provide Diei with a copy of the policies she allegedly violated before being summoned to the Committee in 2019 and 2020, and the College of Pharmacy's website does not contain the "Standards for Student Professional Conduct." (*Id*. at ¶¶ 115–116.)  She also claims that twice during the 2020 Committee hearing, she asked for the specific guidelines and policies she had violated as well as a direct link to them on the website and an explanation of how she had violated these policies. To date, Diei says she is still unaware of the specific policy she violated.  (ECF No. 1, ¶¶ 66 & 68 and ECF No. 32, 10-11.)  However, despite Diei's claims that the URL or link to the UTHSC Academic Catalog or Student Conduct Handbook was malfunctioning on January 28, 2021, (ECF No. 1, ¶ 39), she knew or should have known how to locate, search or otherwise gain access to information on UTHSC's website where all of the university's handbooks are located, including professional codes of conduct.  Diei also claims that Boyd and George's actions served no pedagogical purpose and had a "chilling effect" to her ability and right to post on social media, which caused her to self-censor her posts.   (ECF No. 1, 17, ¶¶ 95–98, and 26 at ¶¶ 143–50.)  The Court finds these arguments are also without merit.

Defendants rely on Sixth Circuit precedence as well as other cases from the Eighth, Ninth and Eleventh Circuits, to support their argument that students attend professional schools to prepare them for licensure in a specific profession, and voluntarily submit to the regulation of the profession.  Case in point,  *Al-Dabagh* v. *Case Western Reserve University*, 777 F.3d 355, 357 (6th Cir. 2015), where

11

an Ohio medical student, who despite his good grades, was denied a medical degree based on his lack of professionalism. The Sixth Circuit referred to the University's Student Handbook regarding "Case Western values [and] 'student professionalism…'" and upheld the University's decision to deny Al-Dabagh a medical degree, finding that university decisions are owed considerable deference. More specifically, *Al-Dabagh* was denied graduation because of professionalism issues including his tardiness to class, propositioning a classmate for sex, and driving while intoxicated. *Al-Dabagh*, 777 F.3d at 357, 359-61. See also *Ward,* 667 F.3d at 734; and *Ku v. State of Tennessee*, 322 F.3d 431, 438 (6th Cir. 2003) ("When reviewing the substance of academic decisions, courts should show great respect for a faculty's professional judgment.") (ECF No. 24-1, 6.)

As noted by the Defendants, "[c]ourts have not reached consensus on how First Amendment protections will apply to comments on social media platforms. *See Morgan v. Bevin*, 298 F. Supp. 3d. 1003, 1012–13 (E.D. Ky. 2018) (denying preliminary injunction regarding the deletion of Facebook and Twitter comments in a case of first impression). In *Hunt v. Board of Regents of Univ. of New Mexico*, the court noted that off-campus, online speech by university students, particularly those in professional schools, involves an emerging area of constitutional law. *Hunt*, 792 Fed. Appx. 595, 601 (10th Cir. 2019). On appeal, the Tenth Circuit affirmed summary judgment in favor of the Board, concluding a medical school could permissibly enforce professional standard policies against a medical student for a distasteful Facebook post. *Hunt,* 792 Fed. Appx. at 601 and *Keefe v. Adams*, 840 F.3d 523, 529-33 (8th Cir. 2016) (finding no First Amendment violation when a student was suspended from a nursing program at a public college for "on-line, off-campus Facebook postings" that the school deemed unprofessional and in violation of governing codes of conduct), *cert. denied*, __U.S.__, 137 S. Ct. 1448, 197 L.Ed.2d 650 (2017).

Diei voluntarily sought admission to the UTHSC College of Pharmacy.  She indicated she had reviewed all of the handbooks and policies prior to enrollment and agreed to be so bound. All of these materials were easily found on the University's website. The UTHSC 2020 Academic Catalog and Student Handbook, CENTERSCOPE, reads in pertinent part:

> Maintenance of Ethical and Professional
>  Standards of the Health Professions
> > Failure to maintain the high ethical and professional standards of the various disciplines of the health professions may subject a student to suspension or other appropriate remedial action by the University.
> > A. A student enrolled at The University of Tennessee Health Science Center is subject to disciplinary action up to, and including, suspension and dismissal for engaging in the following acts of misconduct, regardless of whether such misconduct is engaged in, on, or off, University-owned, or controlled property;
> > . . . .
> > 4.  Other unprofessional and unethical conduct which would bring disrepute and disgrace upon both student and profession and which would tend to substantially reduce or eliminate the student's ability to effectively practice the profession in which discipline he or she is enrolled.

 (ECF No. 24-4, 5.)

Under the traditional test for assessing restrictions on expressive conduct, a regulation (or in this case, a university policy) will be upheld if: "(1) it is unrelated to the suppression of expression, (2) it furthers an important or substantial government interest, and (3) it does not burden substantially more speech than necessary to further the interest." *Blau*, 401 F.3d at 391 (internal citations, quotation marks and brackets omitted). In arguing that the UTHSC College of Pharmacy's professionalism policies are constitutionally overbroad, Diei bears the burden of demonstrating that the policies punish "a 'substantial' amount of protected free speech, as compared to those policies that are plainly legitimate in their application.  This is because "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all

13

enforcement of that law-particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful constitutionally unprotected conduct.'" *Virginia v. Hicks,* 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003); and *Yoder,* 526 Fed. Appx. at 548. Thus, in some instances, the overbreadth doctrine may not be used to prohibit a policy from curtailing speech or conduct. *Id.*

The Court does not find that the UTHSC's professional policies are overbroad or vague.  Tenn. Code Ann. § 63-10-202 declares the following:

> The practice of pharmacy within the state is declared to be a professional practice affecting public health, safety and welfare and is subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the practice of pharmacy, as defined in § 63-10-204, merit and receive the confidence of the public and that only qualified persons be permitted to engage in the practice of pharmacy.

"The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  *McElhaney v. Williams*, No. 2:21-cv-00019, 2022 WL 4103849, at *7 (M.D. Tenn. Sept. 8, 2022).  To state a procedural due process claim, a plaintiff must establish that: (1) she has a property interest protected by the Due Process Clause; (2) she was deprived of this property interest; and (3) the state did not afford her adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.,* 912  F.3d 887, 900 (6th Cir. 2019);  accord *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010).  Due process protection requires that an individual be given an opportunity for a hearing before she is deprived of any significant property interest. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 903 (6th Cir. 2014) "Property interests are not created by the Constitution," but, instead, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84

L.Ed.2d 494 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).  In this case, Diei was provided both notice and a hearing before the Professionalism Committee and ultimately was not dismissed from the College of Pharmacy.

The Court finds that UTHSC did not violate Diei's First Amendment rights by enforcing the University's policies regarding expectations for student conduct and professionalism on and off campus.  These policies are reasonable and clearly apply to on and off-campus activities, including internet and social media communications.  Further, the Court does not find that the Defendants violated Diei's rights under the Fourteenth Amendment by failing to provide her due process, as she alleges.  As noted, in both instances, Diei was advised of the reasons for the investigation and given full hearings. More specifically, when the Committee acted on the second incident by recommending expulsion, which is the subject of this litigation, Diei took advantage of her appeal rights and challenged the Committee's recommendation.  Diei's appeal of the Committee recommendation was successful — the termination recommendation was reversed.

Diei's claim that she was denied due process under the Fourteenth Amendment is simply without merit and is **Denied.**  *Ku v. State of Tenn.,* 322 F.3d at 438.

3.  <u>Adverse Action from the 2019 Hearing</u>

The Individual Capacity Defendants assert that Diei's claims should be dismissed because she has not suffered any adverse action.  With regard to the 2019 social media posts, the Defendants state that after the investigation and hearing, the College of Pharmacy only required Diei to write a 3-page paper reflecting on the incident.  (ECF No. 1 at 10 ¶¶ 46, 47 & 50.)  The Court has already determined that any adverse action related to the 2019 hearing is time-barred.  In addition, Diei has not advanced this claim.  Therefore, this issue need not be addressed.

4.  <u>Adverse Action From the 2020 Hearing</u>

 Similarly, the Individual Capacity Defendants assert that because Diei was not expelled and has not missed any class time, she has not suffered any adverse action, and that her constitutional claims should be dismissed on their merits.[7]  (ECF No. 24-1, 13-16 and ECF No. 35, 7-8.)    Diei alleges that although she was not expelled, she continues to experience emotional distress because she felt at one time that the Committee would be free to investigate her speech in the future and impose disciplinary actions, including expulsion.  (ECF No. 32, 31-35 and ECF No. 1, 18 ¶100.)  That fear has now been dispelled.  However, Diei continues to largely assert that the Committee and the Individual Capacity Defendants took adverse action against her by simply initiating the investigations and punishing her for exercising her protected rights to First Amendment speech. (*Id.*) Diei relies on *Anders v. Cuevas,* 984 F.3d 1166,1176 (6th Cir. 2021) and *Thompson v. Ohio State University*, 990 F.Supp.2d 801, 809 (S.D. Ohio Jan. 6, 2014.)

 A plaintiff must first make a *prima facie* case of retaliation, which comprises the following elements: (1) she engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by her protected conduct. *McGhee v. SchoolCraft Community College*, 167 Fed. Appx. 427, 438 (6th Cir. 2006) and *Benison*, 765 F.3d at 658.  Diei has failed to establish any of the elements—that she engaged in First Amendment protected speech or conduct,

---

[7]  Defendants cite the following cases, *Benison v. Ross*, 765 F.3d 649, 659-60 (6th Cir. 2014) ( a university should be allowed to correct errors through its complete internal appeals process and courts should dismiss claims about alleged errors that are corrected by a final decision on appeal at the university) and *Harris v. Blake,* 798 F.2d 419 (10th Cir. 1986) (during the university appeals process, Harris's forced withdrawal was upheld and deemed the university's final decision)

that adverse action was taken against her, and that the action was motivated by engagement in protected conduct. *Yoder,* 526 Fed. Appx. at 548. Under the facts of this case, Diei's social media posts are not considered protected First Amendment speech and even if they were, ultimately the University did not expel her. Also, Diei's fear that the Committee is likely to investigate her speech in the future and impose disciplinary actions, including expulsion, is moot because of her recent graduation.

5.  Committee Investigations - Violation of Plaintiff's First Amendment Rights

Diei asserts that University officials violated her First and Fourteenth Amendment constitutional rights "by policing her personal, off-campus expression on social media" and concluding after two investigations that some of her posts were "crude," "vulgar" or "sexual." (ECF No. 1, ¶ 1.) Diei states that university officials may not punish a student simply because they do not understand or like the students' expressions. (*Id.* at ¶ 3.) This issue has been addressed in Section Two (2) above where the Court concluded that under the facts of this case, regulation of private off campus speech was appropriate. Diei's speech on social media was not protected by the First Amendment. See *Keeton v. Anderson-Wiley*, 664 F.3d 865, 876 (11th Cir. 2011). The Court has already determined that under certain circumstances, the University may regulate on and off campus speech and conduct. *Al-Dabagh*, 777 F.3d at 357, 359-61, *cert. denied*, 576 U.S. 1006 (2015). Diei acknowledges that she "used profanity and sexual commentary to express her viewpoints." (ECF No. 1, ¶¶ 59, 62.) In viewing the facts of the Complaint, the Court has determined that the content, form, and context of her social media posts are not matters of public concern which are entitled to First Amendment protection. *Hunt v. Board of Regents,* 792 Fed. Appx. 595, 606 (10th Cir. 2019) and *Keefe v. Adams*, 840 F.3d 523, 529-33 (8th Cir. 2016).

6.   <u>The Fourth Cause of Action- Facts Showing President Boyd's Role</u>

President Boyd asserts that the Fourth Cause of Action against him must be dismissed because the Complaint alleges no personal involvement on his part and therefore cannot be held liable under §1983 for failing to prevent an alleged constitutional violation.  (ECF No. 24-1, 24 and ECF No. 35, 20.)  Boyd correctly argues that he cannot be held vicariously liable for Section 1983 claims based on an allegation that he merely failed to prevent a constitutional violation.  Nor is he liable in his individual capacity for the conduct of other university officials or simply based on his status as University President.  (*Id*.)

Diei responds that President Boyd, as President of the University, is responsible for the promulgation, implementation, and enforcement of the College of Pharmacy's policies, procedures, and practices, including those that were used to deprive Diei of her constitutional rights. (ECF No. 1, ¶¶ 10, 137 and ECF No. 32, 12.)  In the Complaint, Diei asserts that, as President of the UTHSC, Boyd managed and directed all affairs and activities of the University in accordance with the policies and regulations provided by the Board of Trustees.  This included supervision of the individuals who enforced those policies, which violated her First and Fourteenth amendment rights.  (ECF No. 1, ¶¶ 10, 106, 119, 137, 152 and 155.) Diei further reiterates that "her Fourth Cause of Action, brought against Defendants Boyd and Chairperson George in their individual capacities, is an as-applied claim for First Amendment retaliation."  (*Id*. at 13, 5–6.)

As noted above, Diei's speech on social media was not a matter of public concern that demands First Amendment protection in an as-applied claim for relief. In addition, Diei does not allege that President Boyd was personally involved in the investigations, hearings or decisions that were taken by the Committee or the Dean of the College of Pharmacy. Therefore, President Boyd may not be

held individually or officially liable for Diei's claims because he did not play a meaningful role in any of the investigation or decision of the Professional Committee or Dean of Pharmacy's. *Ward,* 667 F.3d at 742.

7. Qualified Immunity

 The Defendants argue that if the claims are not dismissed on the merits, then, in the alternative, these causes of action must be dismissed based on qualified immunity.  (ECF No.  24-1, 18–20.) Diei responds that a court may not grant a Rule 12(b)(6) motion to dismiss based on qualified immunity; the defendants are not entitled to qualified immunity because schools may not engage in view-point discrimination or use its professionalism policies as a means or pretext to do so; and state officials, such as Chairperson George may not retaliate against public university students because of their protected expressions.   (ECF No. 32, 30–34.)

 Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights. When conducting a qualified immunity analysis, the court must engage in a two-prong analysis: (1) was there a constitutional violation; and (2) if so, was the right clearly established when the alleged violation occurred? *Endres v. Northeast Ohio Medical University,* 938 F.3d 281, 296 (6th Cir. 2019) citing *McGlone v. Bell,* 681 F.3d 718, 735 (6th Cir. 2012*).* "Although qualified immunity is typically addressed at the summary judgment stage of the case, the defense may be raised and considered on a motion to dismiss. The motion will be granted if the complaint fails to allege the violation of a clearly established constitutional right[,]" which is a question of law.  *Hardy v. Jefferson Community College*, 260 F.3d 671, 677 (6th Cir. 2001.) In *Flaim v. Medical College of Ohio,* the Sixth Circuit determined that it was not unreasonable for the district court to grant a Rule 12(b)(6) dismissal

wherein the defendants raised, among others, the defense of qualified of immunity based on the exaggerated nature of the complaint. *Flaim v. Medical College of Ohio,* 418 F.3d 629, 644 (6th Cir. 2005.) "Although the plaintiff ultimately bears the burden of showing that a defendant is not entitled to qualified immunity, that burden is not high at the 12(b)(6) stage: [r]eading the complaint in the light most favorable to the plaintiff, it need only be "plausible" that an official's acts violated a clearly established constitutional right." *MacIntoch v. Clous*, 69 F.4th 309, 316 (6th Cir. May 31, 2023.) quoting, *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

The Court finds that the Defendants are entitled to qualified immunity, even at this early stage of the litigation. Under the facts of this case, the Defendants would not reasonably know that their actions violated a constitutionally protected right because Diei's rights were not clearly established at the time—no precedent clearly instructed school officers that the type of speech in this litigation, social media posts, was exempt from compliance with school policy. *See also Ward,* 667 F.3d at 733–34. In addition, Diei consented to abide by the university's policies for professional conduct on and off campus. There is no indication in the record that any of the university officials used her posts as a means to retaliate against her merely because they found the posts "crude", "vulgar" and "sexual" and in violation of any clearly established right. *Hardy,* 260 F.3d at 677. The Committee determined that Diei's posts on social media were inappropriate only because of the College of Pharmacy's effort to maintain the high ethical and professional standards of the profession. Therefore, the Court finds that both President Boyd and Chairperson George are shielded from any claims against them in their individual and official capacities based on qualified immunity.

8. Declaratory and Injunctive relief.

Diei seeks declaratory and injunctive relief against the Defendants in order to prevent them from

enforcing the Professionalism Policies against her or anyone else.  In ruling on whether to grant injunctive relief, the Court must consider four factors: (1) the plaintiff's likelihood of success on the merits; ((2) whether the plaintiff would suffer irreparable harm without the injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) the impact of the injunction on the public interest.  *Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 461 (6th Cir. 2005); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007); and *In re DeLorean Co.,* 755 F.2d 1223, 1228 (6th Cir. 1985). Should an injunction issue, the Court must set forth its reasons in compliance with Rule 65(d). *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).  However, the district judge is not required to make specific findings concerning each of the four factors if fewer factors are dispositive of the issue. *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

The Court has already determined that Plaintiff cannot prevail on her claims of First and Fourteenth Amendment due process and retaliation violations against the Defendants.  *Al-Dabagh*, 777 F.3d at 357, 359-61.  Further, Diei's claims have become moot because she has graduated from the UTHSC College of Pharmacy.  There is no realistic expectation she will be expelled. *Yoder,* 526 Fed. Appx. at 543; *DeFunis v. Odegaard,* 416 U.S. 312, 319-20 & n.2 (1974) and *Failka-Feldman v. Oakland Univ. Bd. of T*rustee*s*, 639 F.3d 711, 714 (6th Cir. 2011.)  Because Diei has not currently suffered any irreparable harm, nor is it likely that she would suffer such harm in the future, injunctive relief is inappropriate, and may not issue.  Accordingly, Diei's request for injunctive and declaratory relief is Denied as Moot.

Based on the analyses above, the Court finds that the Individual Capacity Defendants' Motion to Dismiss the Fourth and Fifth Causes of Action, ECF No. 24, should be **Granted.**

## II.   <u>Official Capacity Defendants' Motion to Dismiss- ECF No. 25</u>

By separate motion, the Official Capacity Defendants, the UTHSC Board members and other employees, move to dismiss the First, Second, and Third Causes of Action.   (ECF No. 25 and ECF No. 25-1.)   These Defendants include Defendant Randy Boyd, President of the University of Tennessee system, Defendant Christa George, Chairperson of the UTHSC College of Pharmacy's Professional Conduct Committee ("The Committee"), Defendants Brad Box, John Compton, Charles Hatcher, Decosta Jenkins, Kara Lawson, Amy Miles, William Rhodes III, Donnie Smith, Kim White, Alan Wilson, and Jamie Woodson, members of the Board of Trustees of the UT system ("The Board").   (ECF No. 1, at 4-5 ¶¶10-12).   The Official Capacity Defendants assert that the UTHSC's Professionalism Rule is facially valid and therefore the Court should dismiss the First and Second Causes of Action.   (ECF No. 25-1, 9-19.) They also assert that the Third Cause of Action should be dismissed because the Professionalism Rule as applied is constitutional.  See Tenn. Comp. R. & Regs., Rule 1720-3-5-.01(1)(d).  (*Id*. at 8-9.)

To avoid dismissal for failure to state a claim, a plaintiff must provide a short and plain statement of the claim showing an entitlement to relief that is plausible on its face.  Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 555.  As stated above, "a claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Center for Bio-Ethical Reform, Inc.* 648 F.3d 365 at 369.   Also, the complaint must contain either direct or inferential evidence with respect to all material elements of the claim.  *Wittstock v. Mark A. Van Sile, Inc*. 330 F.3d 899, 902 (6th Cir. 2003).  However, when a claim fails to allege sufficient supporting factual content, that claim is not entitled to the assumption of truth and must be dismissed.  (*Id*.)  Defendants contend that the Court should address the Third

Cause of Action, the as-applied claim, prior to the First and Second Causes of Action, the facial challenges to the Policies, out of sequence.  (ECF No.  25-1, 2-3.)  The "usual judicial practice" is to address an as-applied challenge before a facial challenge because it generally will be more "efficien[t]," because this sequencing decreases the odds that facial attacks will be addressed "unnecessarily" and because this approach avoids encouraging "gratuitous wholesale attacks upon state and federal laws." *Bd. of Trs. of the State Univ. of N.Y. v. Fox,* 492 U.S. 469, 484–85, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), and *Connection Distributing Co. v. Holder*, 557 F.3d 321, 328 (6th Cir. 2009) *(en banc)*.  The Court will address the as-applied challenge first.

1.  The Third Cause of Action

Diei's Third Cause of Action against the Official Capacity Defendants challenges the University's regulation of professional students' speech as unconstitutional and in violation of her due process rights under the First and Fourteenth Amendments.  (ECF No. 1, 22-24, ¶¶126-140.) The Defendants argue that the as-applied Third Cause of Action is the very same Cause of Action asserted in Diei's Fourth Claim for damages against the Individual Capacity Defendants but seeks injunctive relief asking that the Court enjoin and restrain them from enforcing the professional policies against Diei or others in the future.  (ECF No. 25-1, 3-4.)  The Court agrees and finds that a full analysis of Diei's claims in this regard was conducted above by the Court in Section (6) and is applicable here.  As such, the Official Capacity Defendants' motion to dismiss the Third Cause of Action is **Granted.**

2.  The First and Second Causes of Action

Diei's First and Second Causes of Action raise claims against the Defendants in their official capacities asserting that the professionalism policies violate her First and Fourteenth Amendment

rights and 42 U.S.C. § 1983 because they are facially overbroad and vague.   (ECF No. 1, ¶¶ 101-112 and ¶¶ 113-125.) Diei primarily alleges that pursuant to Tenn. Code Ann. §§ 49-9-209(d)(1)(I) and 49-9-209 (e)(1), the policies are facially unconstitutional, and amount to a violation of the First Amendment because it gives complete discretion to Chairperson George and the Committee to punish a broad range of protected speech.  Also, they are overly broad because they permit the College of Pharmacy to regulate off-campus personal speech for no legitimate pedagogical reason. (ECF No. 1, ¶¶103-108.)

The Defendants assert that the UTHSC Professional Rule adopts the State of Tennessee professional standards for pharmacists and pharmacy interns:

> **1140-02-01 (4) Pharmacists and Pharmacy Interns.**
> . . . .
> (4) A pharmacist shall observe the law, uphold the dignity and honor of the profession, and accept its ethical principles. A pharmacist shall not engage in any activity that will bring discredit to the profession, and shall expose, without fear or favor, illegal or unethical conduct in the profession.

Tenn. Comp. R. & Regs. 1140-02-01 (4), and that the University Board of Trustees incorporated those standards in its own UTHSC Professionalism Rule as delineated in the student handbook:

> **1720-03-05-.01 Maintenance of Ethical and Professional Standards**.
>
> 1) A student enrolled at The University of Tennessee, Memphis is subject to disciplinary action up to and including suspension and dismissal for engaging in the following acts of misconduct, regardless of whether such misconduct is engaged in on or off University-owned or -controlled property:
> . . . .
> (d)  Other unprofessional and unethical conduct which would bring disrepute and disgrace upon both student and profession and which would tend to substantially reduce or eliminate the student's ability to effectively practice the profession in which discipline he or she is enrolled.

(ECF No. 25-1, 8-10.)   Defendants cite *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc*., in which the Supreme Court considered First and Fourteenth Amendment challenges by a pharmacist licensed in the state concerning whether pharmacists may be prohibited from advertising drug price information pursuant to Va. Code Ann. § 54-524-35 (1974).  *Virginia State Bd. Of Pharmacy,* 425 U.S. 748, 750 (1976) (the practice of pharmacy is statutorily declared to be a professional practice affecting the public health, safety, and welfare and subject to regulation and control in the public interest.)  "The Virginia State Board of Pharmacy may issue a license, necessary for the practice of pharmacy in the State, only upon evidence that the applicant is "of good moral character." (*Id*.)

Diei contends in her First Cause of Action that because the Professionalism Policies punish a broad range of conduct for no legitimate pedagogical, or educational reason, they are facially overbroad and unconstitutional.  (ECF No. 1, 18, ¶¶ 102-104).  Diei asserts that the policies directly regulate expression and allow punishment of social media content that administrators deem unprofessional.  She claims by maintaining these policies, the Defendants are restricting more expression than is necessary to serve their interests and as such, the policies are overly broad.  (ECF No. 35, 33-34.) Diei cites *Blau v. Fort Thomas Pub. Sch. Dist*, 401 F3d 381, 391 (6th Cir. 2005), which involved a high school student's challenge to the school's dress code.  The Defendants submit that requiring pharmacy students to adhere to professional standards serves a legitimate pedagogical or educational purpose. While enrolled in the school of pharmacy, students are taught what is required of them to become pharmacists. They are also taught what is expected of them ethically and professionally. This is accomplished by requiring compliance with codes of ethics and professionalism.  (ECF No. 25-1, 5-6.)  See *Keeton v. Anderson-Wiley*, 664 F.3d 865, 876 (11th Cir.

2011).

Overbreadth challenges implicate the First Amendment but do not justify prohibiting all enforcement of law or policy where the governmental entity has articulated a legitimate state interest in maintaining control over harmful or constitutionally unprotected conduct.  Under the traditional test for assessing restrictions on expressive conduct, a regulation will be upheld if (1) it is unrelated to the suppression of expression; (2) it furthers an important or substantial government interest; and (3) it does not burden more speech than necessary to further the interest. *Yoder*, 526 Fed. Appx. at 547.

After review, the Court does not find that the University's Professionalism Policy is overbroad or burdens more speech than necessary. The policy mirrors state statutes governing a widely regulated health profession; and the Court has already determined that under certain circumstances, the University may regulate on and off campus speech and conduct.  *Al-Dabagh*, 777 F.3d at 357, 359-61, *cert. denied*, 576 U.S. 1006 (2015) (dismissal of a student on lack of professionalism grounds is an academic decision, professionalism concerns do not end at the classroom door, and university decisions in this regard are entitled to deference from the courts).  Thus, these and any related policies of this kind further an important governmental interest.  As noted above, the Court has determined that Diei's social media posts are not protected speech to the extent they violate University professional codes of conduct, and even if the posts were protected, she voluntarily agreed to abide by the University policies regarding student conduct.  As such, the Official Capacity Defendants' Motion to Dismiss the First Cause of Action is **Granted**.

Similarly, Diei alleges in her Second Cause of Action that the Defendants' Professional Standards are vague, violate the Due Process Clause of the Fourteenth Amendment and should be

enjoined as applied.  (ECF No. 1, 20-22, ¶¶ 113-125.)  After review, the Court finds that the Standards are not overly vague, and Plaintiff has failed to allege sufficient supporting facts to avoid dismissal. Again, the Sixth Circuit in *Yoder* reiterated that the Court has rejected vagueness challenges "when [a party's] conduct clearly falls within a statutory or regulatory prohibition." *Yoder*, 526 Fed. Appx. at 548.  Here, after a prior warning by the Professionalism Committee and the Dean, along with referral to policies within the Student Handbook, Diei knew or should have realized that her social media postings at issue would be deemed unprofessional conduct and subject to disciplinary action as set out in the University's handbook.

Construing the pleading in a light most favorable to the non-moving party as well as the liberal standard afforded a plaintiff during the initial stages of a case alleging a violation of constitutional rights under the First and Fourteenth Amendments and § 1983, Plaintiff has not alleged sufficient facts to avoid a Rule 12(b)(6) dismissal. Accordingly, the Court concludes the Defendants' Motions to Dismiss for failure to state a claim under Rule 12(b)(6) should be Granted and the case Dismissed with Prejudice.

## V.  <u>CONCLUSION</u>

For the reasons stated above, the Court finds the Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 24 and ECF No. 25, are **GRANTED** and the case is ordered dismissed with prejudice.  Based on the instant rulings, the remaining discovery motions, ECF No. 58 and ECF No. 60, are terminated as **Moot**.

**IT IS SO ORDERED** this 3rd day of August 2023.

<u>*s/John T. Fowlkes, Jr.*</u>
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT  JUDGE